**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**FLOYD HOBBS, JR. and**
**CYNTHIA BEVINGTON**                                      **PLAINTIFFS**

**V.**                                      **CIVIL ACTION NO. 3:09cv009-SA-DAS**

**LEGG MASON INVESTMENT**
**COUNSEL & TRUST CO., N.A.**                                      **DEFENDANT**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**PARTIAL SUMMARY JUDGMENT ON BEHALF OF DEFENDANT**
<u>**LEGG MASON INVESTMENT COUNSEL & TRUST CO., N.A.**</u>

      Defendant Legg Mason Investment Counsel & Trust Co., N.A. ("<u>Legg Mason</u>") submits this Memorandum of Law in Support of its Motion for Partial Summary Judgment. Legg Mason seeks judgment as a matter of law on four elements of damages claimed by Plaintiffs: (1) the generation-skipping tax itself as an element of damages; (2) losses arising from the timing of plaintiffs' sale of stock to pay their tax liability; (3) claims for mental and emotional distress; and (4) punitive damages.

<u>**STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

      1.     In his Last Will and Testament ("<u>Will</u>"), Edward H. Johnson created the "Edward and Bernice Johnson Charitable Trust" (two legally distinct trusts were created, collectively the "Trusts"). Amended Complaint, ¶ VII. [Doc. 60].

      2.     Pursuant to Mr. Johnson's Will, the Trusts were two separate trusts, one that was exempt from generation-skipping transfer taxes ("<u>Exempt Charitable Trust</u>") and one that was not exempt from those taxes ("<u>Non-Exempt Charitable Trust</u>"). Report of Douglas L. Siegler at 4 and Report of Mark C. Hartnett dated July 30, 2010, at 5. (Both of these Reports are attached to the Affidavit of Douglas L. Siegler, Exhibit 14 to the Motion for Summary Judgment.)

3.      The Plaintiffs' mother, Peggy Grow, was a recipient of funds under the Trusts upon the death of Bernice Johnson.  Amended Complaint, ¶ VII. [Doc. 60].

4.      Legg Mason became successor co-trustee for the Trusts in 2001.  Legg Mason's Response to Plaintiffs' Request for Admission No.1, Ex. 1 to Motion for Summary Judgment.

5.      Legg Mason remained a co-trustee of the Trusts from 2001 until the Trusts terminated by operation of their terms on January 26, 2008.  Legg Mason's Response to Plaintiffs' Request for Admission No. 2, Ex. 1 to Motion for Summary Judgment.

6.      Floyd Hobbs, Jr. and Cynthia Bevington became beneficiaries of the Trusts upon the death of their mother, Peggy Grow, on or about January 8, 2004.  Legg Mason's Response to Plaintiffs' Request for Admission No. 3, Ex. 1 to Motion for Summary Judgment.

7.      Floyd Hobbs and Cynthia Bevington received distributions under the Trusts for tax years 2004, 2005, 2006, 2007, and 2008.  Legg Mason's Response to Plaintiffs' Request for Admission No. 5, Ex. 1 to Motion for Summary Judgment; Hartnett Report dated December 22, 2009, at p. 3, Ex. 14.

8.      According to Internal Revenue Service tax regulations, once Floyd Hobbs and Cynthia Bevington became beneficiaries under the Non-Exempt Charitable Trust in lieu of their mother, a generation-skipping tax applied to the funds distributed to Floyd Hobbs and Cynthia Bevington.  Amended Complaint, ¶ X. [Doc. 60].

9.      Distributions to a "skip" beneficiary are a rare occurrence which had not previously been encountered by Legg Mason before Floyd Hobbs and Cynthia Bevington became skip beneficiaries of the Trusts at issue here.  Legg Mason's Response to Plaintiffs' Interrogatory No. 13, Ex. 2 to Motion for Summary Judgment.

10.    Plaintiffs' expert witness, Mark C. Hartnett, agrees that generation-skipping tax issues are rare when dealing with a Charitable Remainder Trust, and he has never dealt with this

2

issue. Hartnett Depo. at 49-50. (All excerpts from the deposition of Mark C. Harnett dated October 4, 2010 are attached to the Motion for Summary Judgment as Exhibit 3.)

11.     Legg Mason did not realize during the term of the Trusts that the generation-skipping transfer tax was owed by the Plaintiffs on their distributions from the Non-Exempt Trust. Legg Mason's Response to Plaintiffs' Interrogatory No. 11, Ex. 2 to Motion for Summary Judgment.

12.     Upon review of the Trusts at termination, Legg Mason recognized that the distributions made to Plaintiffs in 2004, 2005, 2006, 2007, and 2008 were subject to the generation-skipping transfer tax. Legg Mason's Response to Interrogatory No. 11, Ex. 2 to Motion for Summary Judgment.

13.     Shortly after Legg Mason learned that the generation-skipping transfer taxes were owed by Plaintiffs, Legg Mason advised Plaintiffs of the tax issue and sent the appropriate tax forms to Plaintiffs on March 3, 2008. Legg Mason's Response to Interrogatory No. 11, Ex. 2 to Motion for Summary Judgment.

14.     The tax notice and tax documentation provided to Floyd Hobbs and Cynthia Bevington for the 2007 and 2008 distributions from the Trusts were timely. Legg Mason's Response to Plaintiffs' Request for Admission No. 6, Ex. 1 to Motion for Summary Judgment; Hartnett Report dated December 22, 2009, at p. 3, Ex. 14.

15.     Plaintiffs learned in March 2008 that they owed back taxes, penalties, and interest due to the failure to pay the generation-skipping tax when they received funds as beneficiaries of the Non-Exempt Charitable Trust. Plaintiffs' Responses to Legg Mason's Interrogatory No. 9, Ex. 4 to Motion for Summary Judgment.

16.     Cynthia Bevington had all IRS penalties for the tax year 2005 abated, and she has not paid the penalties for tax years 2004 and 2006, as abatement for those years is anticipated.

3

Bevington's Response to Legg Mason's Interrogatory No. 13, Ex. 5 to Motion for Summary Judgment.

17.     All of Floyd Hobbs' penalties related to the generation-skipping tax for tax years 2004, 2005, and 2006 were abated in full by the IRS, such that Floyd Hobbs owes no penalties for any year. Floyd Hobbs' Response to Interrogatory No. 22, Ex. 6 to Motion for Summary Judgment.

18.     Neither Plaintiff was assessed penalties or interest by the IRS for the years 2007 and 2008. Hartnett Report dated December 22, 2009, at p. 3, Ex. 14.

19.     Cynthia Bevington initially sought a recovery for emotional injuries in the form of anxiety and increased blood pressure, but has since admitted that her increased blood pressure does not correlate to the applicable time frame. *See* Bevington Response to Interrogatory No. 9, Ex. 4; Bevington Supplemental Response to Interrogatory No. 9 and Bevington Response to Legg Mason's Second Set of Interrogatories, Interrogatory No. 1, Collective Ex. 7 to Motion for Summary Judgment.

20.     Ms. Bevington admits that she never saw a doctor or sought any treatment for her alleged emotional injury or anxiety. Cynthia Bevington Dep. of May 13, 2010, at 28. (All excerpts from Ms. Bevington's deposition are attached as Ex. 8 to Motion for Summary Judgment.)

21.     Ms. Bevington testified that her increased anxiety occurred on the day that she learned of her tax liability for Trust benefits, but her brother made her feel better the next day. Cynthia Bevington Dep. at 29, Ex. 8 to Motion for Summary Judgment.

22.     Floyd Hobbs claims to have suffered emotional injuries of anxiety and stress which increased his blood pressure. Floyd Hobbs' Response to Interrogatory No. 9, Ex. 4;

Hobbs Response to Legg Mason's Second Set of Interrogatories, Interrogatory No. 1, Ex. 9 to Motion for Summary Judgment.

23.     Mr. Hobbs admits that he has been treated for high blood pressure for approximately 6 years, including 4 years before learning of his generation-skipping tax consequences in 2008.  Floyd Hobbs Dep. of May 13, 2010, at 77.  (All excerpts from Floyd Hobbs' deposition are attached as Ex. 10 to Motion for Summary Judgment.)

24.     Neither Ms. Bevington nor Mr. Hobbs designated a medical or other expert to testify concerning increased blood pressure, anxiety, or emotional injuries caused by learning of their generation-skipping tax consequences or any other issue in this lawsuit.

25.     Floyd Hobbs and Cynthia Bevington are also beneficiaries of trusts established by their mother for their benefit (the "Stock Trusts"), which are not related to the Johnson Trusts or to Legg Mason.  Floyd Hobbs is trustee of the Stock Trusts.  Floyd Hobbs Dep. at 8, Ex. 10 to Motion for Summary Judgment.

26.     The Stock Trusts held investments, including shares of PepsiCo stock, for the benefit of Floyd Hobbs and Cynthia Bevington.  Floyd Hobbs Dep. at 10, Ex. 10 to Motion for Summary Judgment.

27.     The Stock Trusts liquidated shares of PepsiCo stock and loaned the proceeds to Plaintiffs.  Bevington Response to Interrogatory No. 14, Ex. 11 to Motion for Summary Judgment; Hobbs Dep. at 37-38, Ex. 10 to Motion for Summary Judgment.

28.     Plaintiffs used the proceeds from the stock sale to pay down a line of credit with the Bank of Holly Springs that had been used to pay their generation-skipping tax obligation.  Hobbs Dep. at 37-38, 46-47, Ex. 10 to Motion for Summary Judgment.

29.     Plaintiff Cynthia Bevington received $1,238,312.46 as a beneficiary of the Trusts for the years 2004 through termination in 2008; Plaintiff Floyd Hobbs received $1,238,312.46 as

5

a beneficiary of the Trusts for the years 2004 through termination in 2008. Affidavit of James Koerber at ¶5, Ex. 13 to Motion for Summary Judgment.

30.     Plaintiffs' expert Mark C. Hartnett opines that the actions of Legg Mason were "imprudent" thus causing Plaintiffs' damages, but he does <u>not</u> opine that the actions of Legg Mason were intentional, grossly negligent, or reckless.  Hartnett Report dated December 22, 2009 at p. 6, Ex. 14.

31.     Plaintiffs' expert Mark C. Hartnett agrees that Legg Mason administered the Trusts in accordance with its terms. ("Yes.  I think they followed the document.") ("They didn't violate it.")  Hartnett Dep. at 6-7, Ex. 3.

32.     Mark C. Hartnett testified that Legg Mason should have gone to Court in Tennessee to seek a modification of the Trusts to allow Plaintiffs—but no other beneficiaries—to receive their distribution from the Exempt Charitable Trust, to the exclusion of the other 7 beneficiaries.  Hartnett Dep. at 19, Ex. 3.

33.     After obtaining a modification, according to Hartnett, Legg Mason should thereafter have sought a Private Letter Ruling from the IRS that the modification would not disqualify the Trusts as charitable trusts under I.R.C. §664.  Hartnett Dep. at 20, Ex. 3.

34.     The opinion of Mark C. Hartnett that Legg Mason should have sought a modification of the Trusts and then a Private Letter Ruling from the IRS in order to be allowed to pay benefits to Plaintiffs from the Exempt Charitable Trust only is being challenged in a Motion to Exclude filed simultaneously with this Motion.

35.     Plaintiffs' accounting expert, Roderick S. Russ III, opined that Plaintiffs suffered a stock liquidation loss because they chose to sell shares of PepsiCo stock to pay their tax obligation.  Russ Report dated December 22, 2009, at Schedule H5, attached to the Affidavit of James Koerber, Ex. 13 to Motion for Summary Judgment.

36.    The opinions of Roderick S. Russ III that Plaintiffs suffered a stock liquidation loss and his supplemental opinion that Plaintiffs should have been paid more from the Exempt Trust than the other beneficiaries are being challenged in a Motion to Exclude filed simultaneously with this Motion.

**LAW AND ARGUMENT**

I.    SUMMARY JUDGMENT STANDARD.

Summary judgment "should be rendered if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  This standard "'mandates the entry of summary judgment . . . against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case . . . .'" *Wilkinson v. Haworth*, 186 F. Supp. 2d 687, 690 (S.D. Miss. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

Significantly, a non-moving party's burden to come forward with "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" by "unsubstantiated assertions," or by only a "scintilla" of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  "[I]f it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis."  *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1995) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)).

Further, the question of whether a duty is owed under a particular circumstance is a question of law for the Court.  *Lee Brother, LLC v. Crowley Liner Svcs.*, Inc., 2007 WL

1858744, *6 (S.D. Miss. June 26, 2007)("The existence of a duty is a question of law, not fact, and must therefore be decided by the court, not the jury.") A determination of what duties Legg Mason owed to Plaintiffs establishes that Legg Mason is entitled to summary judgment on the issues of Plaintiffs' tax obligation, as well as damages for stock losses, emotional injuries and punitive damages.

II.    WHILE BOTH MISSISSIPPI AND TENNESSEE LAW MAY APPLY IN THIS CASE, CHOICE OF LAW CONSIDERATIONS POINT TO APPLICATION OF MISSISSIPPI LAW.

        A.    Conflict of Laws Relating to Trusts Generally

The Trusts were created by the terms of the Last Will and Testament ("Will") of Edward H. Johnson, a resident of Nashville, Davidson County, Tennessee. *See* Amended Complaint, Exhibit A at p. 1. The Will expressly provides that the operation of the charitable Trusts "shall be governed by the laws of the State of Tennessee." *See* Exhibit A to Amended Complaint at ¶ 10, p. 13. Plaintiff Cynthia Bevington is a resident of Tennessee. *See* Amended Complaint at ¶ II, p. 2. Plaintiff Floyd Hobbs, Jr. is a resident of Mississippi. *See* Amended Complaint at ¶ III, p. 2. While Plaintiffs vaguely assert in their Amended Complaint that "the actions giving rise to the Plaintiffs' cause of action occurred" within Mississippi, the law governing the Trusts and the residence of Ms. Bevington call this assertion into question. Amended Complaint at ¶ VI, p. 3.

        According to the Restatement (Second) of Conflict of Laws, the law governing administration of a trust may be designated by the testator. Restatement (Second) of Conflicts of Law, § 271-272. The term "administration of trust" in the Restatement applies to matters relating to the management of the trust, including those relating to the duties owed by the trustee to the beneficiaries. *See* Restatement of Trusts (Second), §§ 169-185. The testator, Mr. Johnson, chose Tennessee law to govern administration of the trust. Exhibit A to Amended Complaint, ¶

8

10, p. 13. Even Plaintiffs' expert, Mr. Hartnett, acknowledges that Tennessee law applies to matters related to the Trusts. Hartnett Report dated December 22, 2009, at 4-5, Ex. 14.

Based upon this authority and the testator's intent, Tennessee law could be construed as applying to the claims and damages in this case. However, as Plaintiffs' claims arise under common law, further analysis is required.

B.  Mississippi Choice of Law Analysis

In diversity actions, federal courts apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). Mississippi applies the "center of gravity doctrine" to determine applicable law. *Zurich American Ins. Co. v. Goodwin*, 920 So. 2d 427, 433 (Miss. 2006). The center of gravity doctrine "is a rule whereby the court trying the action applies the law of the place which has the most significant relationship to the event and parties or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to liabilities and rights of the parties in litigation." *Goodwin*, 920 So. 2d at 433 (citing *Mitchell v. Kraft*, 211 So. 2d 509, 514-15 (Miss. 1968)).

The center of gravity doctrine employs a multistep analysis. *Zurich American Ins. Co. v. Goodwin*, 920 So. 2d 427, 433 (Miss. 2006). The first step is to determine whether a conflict exists between the laws of the two states that have an interest in the litigation. *Goodwin*, 920 So. 2d at 432. If a conflict exists, then the court continues its choice of law analysis. *Id.* If no conflict exists, then the court applies the forum state's law.

The only notable difference between Mississippi and Tennessee law in this case concerns emotional distress damages. Tennessee precludes emotional distress damages in a property tort action when the act causing the property damage is not "inspired by fraud, malice or like motives." *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006). If emotional distress damages

are based on a claim for negligent infliction of emotional distress, expert proof concerning emotional damages is required. *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996). Mississippi allows emotional damages only if supported by adequate proof of demonstrative harm. *Community Bank v. Courtney,* 884 So. 2d 767, 775 (Miss. 2004). Given Plaintiffs' complete lack of expert medical proof concerning emotional injuries, Plaintiffs fail to state a claim under either state's law. Given this slight conflict of law between Mississippi and Tennessee, Mississippi's law, as the forum state, should apply to the claims here.[1]

III.  PLAINTIFFS' CLAIM THAT ALL BENEFITS TO THEM SHOULD HAVE BEEN FROM THE EXEMPT CHARITABLE TRUST IS CONTRARY TO THE WILL, IRS REGULATIONS, AND APPLICABLE LAW.

In his supplemental report submitted on July 30, 2010, Mark Hartnett opines that Legg Mason caused Plaintiffs' tax liability by failing to pay Plaintiffs solely from the Exempt Charitable Trust. Hartnett Supplemental Report dated July 30, 2010 at Ex. A, p. 4-6, Ex. 14 to Motion for Summary Judgment. In his deposition, however, Mr. Hartnett admits that Legg Mason administered the Trusts according to their terms. Hartnett Dep. at 6-7, Ex. 3. So, too, the person responsible for drafting the Will creating the Trusts testified that Legg Mason administered the Trusts according to what was anticipated by the language of the Trusts. Thrailkill Dep. at 26, Ex. 12 to Motion for Summary Judgment. In fact, had Legg Mason administered the Trusts differently, without seeking a court-ordered modification, the Trusts may have been disqualified as charitable trusts. Hartnett Dep. at 54, Ex. 3. Thus, absent a duty to modify the Trusts, Legg Mason's payment of trust benefits to Plaintiffs in the manner paid does not create any liability of Legg Mason for the taxes owed by Plaintiffs because the Trusts' terms

---

[1] While Defendant believes that Mississippi law should apply to all claims, it will evaluate the issues in this Motion under both Mississippi and Tennessee law for the Court's convenience. No matter what state's law applies, Defendant is entitled to partial summary judgment on all issues raised herein.

mandated such distributions.[2]

In an effort to create liability against Legg Mason for the taxes owed by Plaintiffs, Mr. Hartnett suggests that Legg Mason should have sought modification of the Trusts in Tennessee state court and then sought an IRS Private Letter Ruling to "bless" the modification to pay Plaintiffs' primarily from the Exempt Trust. Hartnett Dep. at 19-20, Ex. 3. This opinion is faulty for at least three reasons: (1) a trustee does not have a duty to reform an instrument; (2) whether modification of the instrument would have been allowed by the court or whether the IRS would have blessed it in a Private Letter Ruling is speculative; and (3) Legg Mason's duty of loyalty to all beneficiaries would not permit it to take actions to modify the Trusts that benefitted only two of nine beneficiaries. If Hartnett's proposed action had been taken, and another beneficiary had died, that beneficiary's heirs would be detrimentally affected. Mr. Hartnett's opinion on his proposed theory is the subject of a Motion to Exclude under *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), filed simultaneously with this Motion. The Motion to Exclude should be considered in conjunction with this Motion, along with the motion to exclude the same opinion by Roderick Russ.. Given Mr. Hartnett's faulty analysis, Legg Mason believes that his opinion on this issue will be stricken.

Summary judgment is properly rendered when a plaintiff's expert on an issue requiring expert testimony is excluded for failing to satisfy *Daubert*'s gate-keeping factors. *Hammond v. Coleman Co.*, 2000 WL 283165, *2 (5th Cir. (Miss.) Feb. 1, 2000). *See also*, *Buxton v. Lil' Drug Store Prods., Inc.*, 2007 WL 2254492, *9 (S.D. Miss Aug. 1, 2007) ("Expert testimony will not salvage a plaintiff's case from summary judgment unless that testimony would be admissible into evidence.") Mr. Hartnett's (and Mr. Russ') opinion regarding Legg Mason's fault for

---

[2]  Larry Thrailkill testified in his deposition that Mr. Johnson was aware that there would be tax liabilities to skip beneficiaries under the terms of the Trust, yet he signed the document anyway. Thrailkill dep. at 23-24, Ex. 12.

11

Plaintiffs' tax liability does not satisfy *Daubert*. Without such expert testimony, this claim is improper and should be dismissed.

    A. <u>Legg Mason did not have a duty to seek modification of the Trusts.</u>

Legg Mason was not required to seek modification of the Trusts in this case. While Tennessee law *permits* a trustee to seek modification if warranted, it by no means requires that a trustee seek modification of a trust. In fact, the law expressly holds that a trustee will **not** be liable for filing to seek a modification: "Nothing in this section or this chapter is intended to create or imply a duty for a trustee to make or seek approval of a modification . . . and a trustee is not liable for not making or seeking approval of a modification . . . ." Tenn. Code Ann. § 35-15-410 (c). As long as it administered the Trusts according to their terms and paid the benefits as established in the trust instrument, Legg Mason satisfied its duty to Plaintiffs and the other beneficiaries. Plaintiffs complain of tax liability resulting from the terms of the Trusts, arguing that Legg Mason should have done something to avoid those taxes for Plaintiffs. However, Legg Mason did not have a duty to seek modification of the Trusts.

Plaintiffs' trust expert agrees that Legg Mason administered the Trust according to their terms:

> Q. . . . [W]hat is the practical distinction in the issue as phrased by Mr. Si[e]gler . . . ?
> A. . . . Mr. Si[e]gler asked . . . [whether] following the letter of that [W]ill could they [Legg Mason] have done anything differently than what they did. And his answer is no, they couldn't or they would have violated the CRAT rules. And I agree with that.
> . . . .
> Q. . . . Insofar as following the letter of the Johnson [W]ill is concerned, you would agree with me that Legg Mason did that . . . .?
> A. Yes. I think they followed the document.

Hartnett Dep. at 6-7, Ex. 3.

Moreover, under the terms and provisions of the Will, Mr. Johnson made it abundantly clear that the trustee of the Trusts had no duty to do the things that Mr. Hartnett claims should have been done. The following terms and provisions of the Will highlight the absence of any duty on the part of Legg Mason to seek state court modification of the Trusts or to seek a Private Letter Ruling from the IRS:

- In Article V, paragraph 6 of the Will, Mr. Johnson allows his executor to create two separate marital trusts, and two were created, one exempt and one non-exempt. Thus, Legg Mason received both an exempt and a non-exempt charitable trust, both with identical beneficiaries, and it administered the Trusts accordingly, which even plaintiffs' expert Hartnett agrees it did.

- At Article VI, paragraph 1 of the Will, Mr. Johnson establishes his primary intention to establish a charitable remainder annuity trust, not to save generation-skipping transfer tax for plaintiffs.

- At Article VI, paragraph 11 of the Will, Mr. Johnson gives his trustees a very limited power to amend the Trusts "for the sole purpose of ensuring that the Charitable Trust qualifies, and continues to qualify, as a charitable remainder annuity trust within the meaning of Section 664(d)(1) of the Code." No further amendments were authorized, because Mr. Johnson knew that they might jeopardize the charitable trust qualification.

- At Article VII, paragraph 1 of the Will, Mr. Johnson provides "notwithstanding any provision of my Will to the contrary," that no provision of his Will should be construed as permitting the trustees to withhold the annuity amounts from the charitable trust recipients if doing so would disqualify the charitable trusts under Section 664 of the I.R.C., which would have been the case had the required amounts not been paid to plaintiffs from both the Exempt Charitable Trust and the Non-Exempt Charitable Trust.

- Under Article X, paragraph 1 of the Will, Mr. Johnson authorizes his fiduciaries to exercise only state law powers as existing "on the date of the execution of my Will." The reason for this careful draftsmanship is to ensure that no unanticipated changes in state law would jeopardize the qualification of the Trusts as charitable trusts—such as Mr. Hartnett's proposals would do.

- Finally, in Article X, paragraph 5 of the Will, Mr. Johnson authorizes his fiduciaries to divide his charitable trust into two trusts for generation-skipping transfer purposes, one to have an inclusion ratio of one and one an inclusion ration of zero. Mr. Johnson's executor did this, and it is the only division authorized by Mr. Johnson. Even with respect to this provision, Mr. Johnson

13

made it optional because his primary concern was qualification of the Trusts as charitable trusts.

In addition, Plaintiffs' argument that a state court action for modification followed by an IRS proceeding to "bless" the modification is untenable. Legg Mason could not fund a court case and an IRS proceeding with assets from the Trusts. Section 664 of the Internal Revenue Code is explicit that, in order for a trust to qualify as a Charitable Remainder Trust, "no amount other than the payments described in § 664(d)(1)(A) and qualified gratuitous transfers described in § 664(d)(1)(C) may be paid to or for the use of any person other than an organization described in § 170(c)." Also, under I.R.C. §4941(d), using trust funds to pay for the state court modifications and IRS PLR request would be an act of self-dealing and subject the Trusts to excise tax which would imprudently harm all beneficiaries and not be allowed. The payments specified are precise percentages that must be paid to beneficiaries. These Code sections do not allow for the discretionary spending required to pay for a court proceeding and later application to the IRS for a private letter ruling for the benefit of only some beneficiaries. Further, no one suggests that Legg Mason had an obligation to pay for seeking modification and Private Letter Ruling from its own pocket. To the contrary, Mr. Hartnett readily admits that Legg Mason should not have to bear the costs associated with seeking a modification of the Trusts. Hartnett Dep. at 39, Ex. 3. Legg Mason's failure to seek a court modification and IRS Private Letter Ruling cannot be the basis for a recovery of the taxes Plaintiffs owed and paid.

B. Reformation of the Trusts would have violated Legg Mason's duty to the other seven beneficiaries.

Perhaps more important, a trustee's duty is to be impartial and loyal to all beneficiaries. Tenn. Code Ann. § 35-15-802; *McFarlin v. McFarlin*, 785 S.W.2d 367, 370 (Tenn. Ct. App. 1990) ("duty of undivided loyalty to the estate and impartial and just treatment to each of the beneficiaries" are important duties of the trustee). Modification of the Trusts in

14

order to pay Plaintiffs largely from the Exempt Trust not only would not have benefitted the remaining beneficiaries, but it would have been detrimental if any other beneficiary had died. The death of any other original beneficiary would have created a skip beneficiary for his or her interest in the Trusts. If the Trusts were reformed to pay solely the Plaintiffs from the Exempt Trust, then any other skip beneficiary would have been denied the opportunity to receive exempt benefits. Plaintiffs have the benefit of hindsight to argue that no other original beneficiaries died, so no other skip beneficiaries were created, but Legg Mason had no way of knowing that would be the case in 2004. To assert that Legg Mason is responsible for Plaintiffs' tax obligation because it did not file an action to modify the Trusts is not tenable under the law or in keeping with Legg Mason's obligation to all the Trusts' beneficiaries.

IV.  PLAINTIFFS CANNOT RECOUP ALLEGED LOSSES FROM THE LIQUIDATION OF PEPSICO STOCK TO PAY THEIR TAX OBLIGATIONS.

Plaintiffs seek "financial losses arising from the immediate need by plaintiffs to liquidate large portions of their personal wealth in the form of corporate equity shares, sold in a depressed market." *See* Amended Complaint at ¶ XIX. Plaintiffs lack standing to pursue these damages which are also wholly speculative.

The "corporate equity shares" at issue were shares of PepsiCo stock held in the Stock Trusts for Plaintiffs' benefit. Hobbs Dep. at 10-13; 37-38, Ex. 10. Plaintiffs sued solely in their individual capacities yet the Trustee of the Stock Trusts is the proper party to pursue this claim. Further, these damages are too speculative to be permitted.

A.  The Stock Sold Was Held in Trust, and Plaintiffs Lack Standing to Pursue Damages.

In both Mississippi and Tennessee, assets held by a trust belong to the trust for purposes of legal redress. *Commissioners of Sinking Fund v. Walker*, 7 Miss. 143, 1842 WL 2048, *29 (1842) ("The trustee is regarded as the legal owner" of trust property and "the remedy at law is

15

with him [the trustee] in all cases concerning trust property or funds."); *Pilcher v. Rylee*, 1925 WL 1949, *5 (Tenn. Ct. App. 1925) ("The trustees of an expressed trust have the legal title to and are legal owners of personal property belonging to the trust estate . . . "); *Gregory v. Merchants State Bank*, 135 S.W.2d 465, 474 (Tenn. Ct. App. 1939) ("It is the right and duty of the trustee, and of him alone, to proceed by suit, or other legal proceeding, if necessary, to collect or reduce to possession the property and assets belonging to the trust estate")  Plaintiffs cannot pursue an alleged loss associated with the sale of the stock held in the Stock Trusts.  Rather, that claim lies with the Trustee of the Stock Trusts in his capacity as Trustee.  While Floyd Hobbs is the Trustee of the Stock Trusts, he has not sued on behalf of the Stock Trusts as the Trustee. Floyd Hobbs Dep. at 15, Ex. 10.  Instead, he has sued only in his individual capacity as a beneficiary under the Johnson Charitable Trusts.  The claims for stock losses are not proper here.

> B.      Stock Losses are not a Proper Element of Damages.

Plaintiffs argue that they were compelled to sell shares of PepsiCo stock in order to pay their generation-skipping tax liabilities – tax liabilities that would have been owed even if Legg Mason identified the skip beneficiary issue in the first year of distributions.[3]  Plaintiffs' need to sell assets in order to pay those taxes does not create a recoverable damage.

> 1.      Stock Loss Not Proximately Caused by Defendant.

Directly on point to this issue is *Callicutt v. Professional Serv. of Potts Camp, Inc.*, 974 So.2d 216 (Miss. 2007).  In *Callicutt*, the plaintiff claimed to have received bad tax advice concerning his purchase of property and resale of same.  Plaintiff earned a net profit on the sale of the property of $1.2 million dollars.  Over one year later, plaintiff learned that the property

---

[3] While Plaintiffs argue that they would have no tax liability if Legg Mason had paid them solely from the Exempt Charitable Trust, such an argument is invalid under the Will, IRS regulations, and applicable state law.  *See, supra*, at 10-13; Motion to Exclude Mark C. Hartnett, filed simultaneously with this Motion.  Legg Mason makes this argument assuming that Hartnett's improper and unsustainable opinion to the contrary will be stricken.  Even if the opinion is not stricken, damages for the stock loss are too uncertain to be recoverable.

sale was not tax exempt, and he sued Professional Services for giving him improper tax advice. Part of plaintiff's claimed damage was lost future lease income from property he was forced to sell in order to pay his tax obligation. The Mississippi Supreme Court declined such a recovery.

The *Callicutt* court noted that the nature of the transaction, standing alone, resulted in the tax liability. *Id*. at 219. Because of this, defendants could not "be held liable for any actions that [plaintiff] was forced to take to pay taxes for which he would have been responsible with or without the involvement of [defendants]." *Id*. at 221. The Court held that "as a matter of law, the lost future profits were not the result of any conduct on the part of [defendants]." *Id*.

Here, Plaintiffs' claimed loss in the value of stock sold to pay their tax obligations is not recoverable. Legg Mason admittedly administered the Trusts in accordance with its terms and applicable laws and regulations. Hartnett Dep. at 6-7, Ex. 3. Plaintiffs owed the taxes by operation of law. Receipt of benefits from the Non-Exempt Trust was a taxable event that Legg Mason did not cause. As in *Callicutt*, Plaintiffs' tax obligations are not damages for which Defendant is responsible.

        2.     <u>Stock Loss is Not Reasonably Foreseeable Damage and is Based on Speculation</u>.

Only reasonably foreseeable damages are recoverable. *Randolph v. Lambert*, 926 So. 2d 941, 946 (Miss. App. 2006). Here, Plaintiffs' claimed losses related to PepsiCo stock were not foreseeable and are based on pure speculation.

That Plaintiffs would need to sell stock in order to pay their taxes was not reasonably foreseeable. Plaintiffs received substantial sums as beneficiaries of the Trust, and could have saved money from these distributions to pay taxes. Indeed, Ms. Bevington did save some of the money. Bevington Dep. at 15-16, Ex. 8. Plaintiffs also could have sold assets without fluctuating values to pay their taxes. This claimed stock loss is simply not a foreseeable damage.

Moreover, the claimed stock loss damage is either a fiction or so speculative that recovery is impermissible. Given the well–known volatility of the stock market, Plaintiffs' losses may not exist. Plaintiffs sold the stock in December 2008 for $55.00 a share. Koerber Report at 5, Ex. 13. Plaintiffs' assert, through their expert Roderick Russ, that the value of the stock in November 2009 was $61.62 per share, thus arguing that Plaintiffs suffered a loss of $6.62 per share. Russ Report at Schedule H5, Ex. 13. However, had Plaintiffs sold their stock anytime from March 2008 (when they learned of their tax obligation) until September 2008 (just after they paid the taxes and interest with a loan from the Bank of Holly Springs), they would have earned *more per share* than the November 2009 price used as a benchmark for damages. The average price per share from March 2008 to September 2008 was $68.42 per share. Koerber Report at 5, Ex. 13. This illustrates that Mr. Russ's calculations of losses are grossly speculative.

Even worse, Mr. Russ opines that the actual damage should be calculated using the value of the stock *on the day that judgment is entered*. Russ Report at Schedule H5, fn. 1, Ex. 13. Whether a loss even exists, then, is in question. The random nature of this claim and unpredictability of the stock market render this damage beyond reasonable calculation. This claim for damages should be dismissed.

V.      PLAINTIFFS HAVE NO PROOF TO ESTABLISH DAMAGES FOR MENTAL OR EMOTIONAL DISTRESS

Plaintiffs claim damages for "consequent and foreseeable emotional injuries, with and without physical manifestations of said injuries, directly caused and occasioned by the acts and omissions of the Legg Mason defendants described above." Amended Complaint, ¶ XIX(A). All allegations of the Amended Complaint are stated in terms of negligence and not in terms of any intentional act. As a result, Plaintiffs' claims for emotional injuries must arise under the law

for negligent infliction of emotional distress, as opposed to intentional conduct or outrageous behavior.

    A.    <u>Mississippi</u>

Under Mississippi law, unless the conduct causing the emotional distress was intentional or outrageous, "the Plaintiffs … have to prove some sort of injury, whether it be physical or mental. If the conduct was not malicious, intentional or outrageous, there must be some sort of demonstrative harm." *Community Bank v. Courtney,* 884 So. 2d 767, 775 (Miss. 2004). The Mississippi Supreme Court later elaborated, holding that mental or emotional injury requires proof that the "injury is medically cognizable and treatable. In such a case of ordinary negligence a plaintiff may not recover damages for emotional distress without showing a physical manifestation of injury or demonstrable harm." *Paz v. Brush Engineered Materials, Inc.,* 949 So. 2d 1, 4 (Miss. 2007). As noted in *Community Bank v. Courtney*, 884 So. 2d 767, 775-76 (Miss. 2004), testimony of "stomach problems" is insufficient demonstrative harm. Because "mental anguish is a nebulous concept," it requires "substantive proof for recovery." *McGuffie v. Heffington*, 966 So. 2d 1274, 1278 (Miss. App. 2007).

Further, any claimed mental injury must be reasonably foreseeable from defendant's conduct. *Edmonds v. Beneficial Mississippi, Inc.*, 212 Fed. Appx. 334, 337038 (5th Cir. 2007) (applying Mississippi law). In *Edmonds*, the court concluded that allegations of increased blood pressure, without more, do not meet the substantial proof required in Mississippi for recovery of emotional distress damages. *See also Spann v. Word of Faith Christian Center Church*, 589 F. Supp. 2d 759, 772 (S.D. Miss. 2008) (proof of being "depressed" or "very upset" insufficient to establish emotional distress damages).

Here, Plaintiffs have a glaring lack of any proof, much less substantial proof, to establish a claim for emotional distress damages. Ms. Bevington was worried. Bevington Dep. at 29, Ex.

8.  Mr. Hobbs claims an increase in his blood pressure, despite the fact that he has been treated for years for high blood pressure, even before this tax liability arose.  Hobbs Dep. at 77, Ex. 10. Neither Plaintiff has medical proof to demonstrate causation or otherwise to sustain their claims. Plaintiffs cannot, as a matter of law, meet Mississippi's high proof requirements to recover emotional distress damages.

B.      Tennessee

In Tennessee, recovery of emotional distress damages for property torts caused by simple negligence is disallowed.  *Whaley v. Perkins*, 197 S.W. 3d 665, 670 (Tenn. 2006).  In *Whaley*, the Tennessee Supreme Court opined, "subject to some exceptions, generally, under ordinary circumstances, there can be no recovery for mental anguish suffered by plaintiff in connection with an injury to his or her property.  Where, however, the act occasioning the injury to the property is inspired by fraud, malice or like motives, mental suffering is a proper element of damage."  *Id.* at 670.  As there is no allegation of fraud, malice or improper motive in this case, under Tennessee law, Plaintiffs are precluded from a recovery for emotional distress damages.

The only way Plaintiffs can seek emotional/mental damages under Tennessee law, is by a separate cause of action, i.e., negligent infliction of emotional distress, rather than a parasitic damage arising from the property tort.  As a separate claim rather than strictly an element of damages, a plaintiff must meet a higher standard of proof.  *Flax v. DaimlerChrysler Corp.*, 272 S.W. 3d 521 (Tenn. 2008).  The *Flax* Court noted that in cases involving personal injury, mental anguish damages are less likely to be fraudulent.  *Id.* at 530.  However, absent personal injuries for which a plaintiff seeks recovery, emotional damages lack reliability, thus requiring more proof.  In *Isabel v. Velsicol Chem. Co.*, 327 F. Supp. 2d 915, 920 (W. D. Tenn. 2004), the court determined that "emotional distress damages may not be parasitic upon property damages alone."  Here, Plaintiffs must meet the proof requirements associated with a claim for negligent

20

infliction of emotional distress under Tennessee law in order to recover emotional distress damages.

In order to make a *prima facie* case for negligent infliction of emotional distress in Tennessee, a plaintiff must present material evidence as to each of the five elements of general negligence: duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause. *Eskin v. Bartee,* 262 S.W.3d 727, 735 (Tenn. 2008); *Lourcey v. Scarlett,* 146 S.W.3d 48, 52 (Tenn. 2004); *Camper v. Minor,* 915 S.W.2d 437, 446 (Tenn. 1996). Special proof requirements apply to the emotional injury or loss element: (1) the claimed emotional injury must be serious or severe and (2) the claimed injury must be supported by expert proof. *Eskin,* 262 S.W.3d at 735; *Camper,* 915 S.W.2d at 446; *Flax,* 2008 WL 2831225 at *3. As to the first requirement, "[a] 'serious' or 'severe' emotional injury occurs 'where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.'" *Camper,* 915 S.W.2d at 446. The Tennessee Supreme Court emphasizes that fright, fear, hurt feelings, etc., are not sufficient for recovery – "[o]nly those serious or severe emotional injuries which disable a reasonable, normally constituted person from coping adequately with the stress" can support recovery. *Ramsey v. Beavers,* 931 S.W.2d 527, 532 (Tenn. 1996). In order to avoid fraudulent emotional anguish claims, the claimed injury must be serious or severe, and proof of the injury must be supported by expert testimony. *Eskin v. Bartee*, 262 S.W.3d 727, 735 (Tenn. 2008).

There is no proof here that Plaintiffs' emotional injuries are so severe as to "disable a reasonable, normally constituted person." *Ramsey* at 532. Most significantly, neither Plaintiff has identified an expert to substantiate any emotional injury. Under both Mississippi and Tennessee law, therefore, Defendants are entitled to summary judgment on this issue.

21

VI.    PLAINTIFFS CANNOT ESTABLISH THE HIGH STANDARD TO RECOVER PUNITIVE DAMAGES; AS A MATTER OF LAW, PUNITIVE DAMAGES ARE INAPPROPRIATE

    A.    Legg Mason's Actions Do Not Give Rise to a Claim for Punitive Damages.

Generally, a trustee owes a duty of loyalty, a duty to exercise reasonable care, and a duty to keep trust property separate, among other duties. Restatement (Second) Trusts §§ 170-185. Failure to provide a skip beneficiary tax forms is not a fiduciary duty, but rather a ministerial obligation. This is especially true where the Plaintiffs employed their own tax professionals to handle tax issues and reporting. *See* Bevington Dep. at 14-15, Ex. 8; Hobbs Dep. at 67, Ex. 10. Failure to provide the appropriate tax forms does not breach a fiduciary duty, but rather, amounts at most to simple negligence. Based upon this, for tax reporting purposes, Legg Mason did not have a fiduciary relationship with Plaintiffs. Plaintiffs' claims for punitive damages, sought only in relation to the breach of fiduciary duty claims, are improper.

    B.    Plaintiffs Cannot Establish the Level of Conduct Required in Order to Maintain a Claim for Punitive Damages.

Even if punitive damages are at issue, Plaintiffs cannot meet the high burden of proof required to recover such damages.

        1.    Mississippi

Mississippi Code Annotated §11-1-65 (1972) provides, in relevant part, that punitive damages may only be awarded if the plaintiff "prove[s] by *clear and convincing evidence* that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." (emphasis added). Punitive damages are intended "as an example and warning to others" and should "be allowed only with caution and within narrow limits." *Wallace v. Thornton*, 672 So. 2d 724, 728 (Miss. 1996) (citations omitted).

Punitive damages therefore are only to be assessed in extreme cases. *Gardner v. Jones*, 464 So. 2d 1144, 1148 (Miss. 1985); *Neider v. Franklin*, 844 So. 2d 433, 438 (Miss. 2003)(quoting *Parcelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 442 (Miss. 1999)). The traditional test for punitive damages is found in *Fowler Butane Gas Co. v. Varner*, 141 So. 2d 226, 233 (1962), which provides:

> The kinds of wrongs to which punitive damages are applicable are those which, beside the violation of a right or the actual damages sustained, import insult, fraud, or oppression and not merely injuries but injuries inflicted in the spirit of wanton disregard for the rights of others. *In order to warrant the recovery of punitive damages, there must be some element of aggression or some coloring of insult, malice or gross negligence, evidencing reckless disregard for the rights of others, so as to take the case out of the ordinary rule*. (emphasis added).

Punitive damages are allowed only in cases where the "negligence is so gross as to indicate a wanton disregard for others." *U.S. Indus. v. McClure Furniture Co*., 371 So. 2d 391, 393 (Miss. 1979); *see also Satcher v. Honda Motor Co*., 52 F.3d 1311, 1316 (5th Cir. 1995). Because of this heightened standard, punitive damages are not allowed in cases of simple negligence. *Boling v. A-1 Detective & Patrol Servs*., 659 S. 2d 586, 588-589 (Miss. 1995). Plaintiffs cannot meet this heightened standard, and their punitive damages claims should be dismissed.

2.    Tennessee

In Tennessee, punitive damages are awarded only in the most egregious cases, where a defendant has acted "intentionally, fraudulently, maliciously or recklessly." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). The lowest of these standards, recklessness, requires proof that a person "is aware of, but *consciously disregards*, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances." *Id.* Proof of such offending conduct must be established by clear and convincing evidence. *Id.*

Because of this stringent standard, claims for punitive damages in Tennessee are "generally denied in cases where only proof of simple negligence" is offered. *Anderson v. U.S.A. Truck, Inc.*, 2008 at 442, 6810 (Tenn. Ct. App. 2008). Here, Plaintiffs simply cannot meet their substantial burden of proof to show Defendant acted recklessly. There is no proof that Legg Mason was aware of but consciously disregarded Plaintiffs' liability for skip beneficiary taxes. To the contrary, Legg Mason states, and Plaintiffs do not dispute, that Legg Mason first learned of this tax liability when the Trusts terminated in 2008. These facts do not establish egregious conduct. This is a case of simple negligence and punitive damages are improper.

## CONCLUSION

Legg Mason is entitled to judgment as a matter of law on Plaintiffs' claims for stock losses, emotional injuries, and punitive damages. Further, Plaintiffs cannot show that Legg Mason caused their tax obligation, so a claim to recover those taxes is inappropriate. Based upon this, Legg Mason respectfully requests that this Court enter an order granting Legg Mason summary judgment on these issues.

Respectfully submitted, this 11th day of October, 2010.

> LEGG MASON INVESTMENT COUNSEL &
> TRUST CO., N.A.
>
> By: /s/ J. Stevenson Ray
>    J. STEVENSON RAY (Miss. Bar No. 4649)
>       601-985-4520
>       Steve.ray@butlersnow.com
>    KYLE V. MILLER (Miss. Bar No. 102227)
>       601-985-4514
>       Kyle.miller@butlersnow.com
>    ITS ATTORNEYS

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS
      & CANNADA, PLLC
1020 Highland Colony Parkway, Suite 1400
Post Office Box 6010
Ridgeland, Mississippi 39158-6010
(601) 948-5711

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, one of the attorneys for Defendant Legg Mason Investment Counsel & Trust Co., N.A., does hereby certify that he has this date filed the foregoing instrument with the Clerk of the Court using the Case Management/Electronic Case Files system which sent notification of such filing to the following:

      Mr. S. Duke Goza
      sarav@hickmanlaw.com

      Mr. S. Kirk Milam
      kmilam@hickmanlaw.com

      ATTORNEYS FOR PLAINTIFFS

This the 11th day of October, 2010.

                   /s/ J. Stevenson Ray
                   J. Stevenson Ray

Jackson 5617111v1