**Monday, September 20, 2010**

*CRAT Modification*

*GiftLaw Pro*

**GiftLaw Note:** In the decedent's estate, a 5% charitable remainder annuity trust (CRAT) was created for the life of beneficiary A. After the demise of beneficiary A the trustees will distribute the principal from the annuity trust to qualified exempt charities.

Beneficiary A and the trustees now request permission to make distributions of principal and income from the trust directly to qualified exempt charities. Apparently, the 5% annuity trust has grown and the principal is significantly in excess of the amount required to ensure payment of the annuity. The trustees agree that the principal shall not be reduced below a level necessary to ensure payment of the 5% annuity to A for the duration of A's lifetime.

Reg. 1.664-2(a)(1) allows payment to a Sec. 170(c) organization, so long as the adjusted basis of property distributed is fairly representative of the adjusted basis of all property available. Therefore, the discretion to make distributions to charity is a permissible addition to the annuity trust.

**Editor's Note:** This plan is similar to the provision based on PLR 9550026 that may be added to unitrust documents. With a unitrust, a percentage of the principal may be gifted annually to qualified charities. However, this does reduce proportionately the income of the unitrust, as compared with the annuity trust, which pays a fixed annuity. In both cases, the charitable trust becomes in effect a combination of an income stream to a beneficiary and a personal foundation for making current grants to qualified charities.

Internal Revenue Service

Release Date: 12/29/2000

This letter responds to a letter dated March 20, 2000, and subsequent correspondence, submitted by you as Trust's authorized representative on behalf of Trust, requesting a ruling under § 664 of the Internal Revenue Code concerning the proposed modification of Trust.

The information submitted states that X established Trust on D1. X died on D2, and was survived by A. Pursuant to the terms of Trust, a trust represented as being a charitable remainder annuity trust under § 664 (the CRAT) was established for the benefit of A.

Article 4.01(A) of Trust provides for the trustees of the CRAT to distribute annually to A, for the duration of A's life, an annuity amount equal to 5 percent of the initial fair market value of the assets placed in the CRAT. Upon A's death, the trustees shall distribute the remaining principal and undistributed income of the CRAT to any one or more charities selected by the trustees that are organizations described in §§ 170(c) and 2055(a) (Qualified Charities).

**EXHIBIT____Q____**

The trustees of the CRAT propose to modify Trust to authorize the trustees to make distributions of principal and income from time to time during A's lifetime to any one or more Qualified Charities selected by the trustees, but only to the extent that the fair market value of the assets of the CRAT exceeds $x at the time of such distribution. The trustees shall make no distribution of principal or income from the CRAT to the extent that such distribution would endanger the ability of the CRAT to pay the required fixed 5 percent annuity to A for the duration of A's lifetime.

The trustees have obtained the consent of A to the proposed modification. The trustees have also obtained the consent of the attorney general of State, the laws of which govern the rights and duties of the parties and beneficiaries of Trust, pursuant to the terms of Trust. The trustees have petitioned Court for an order directing the modification of Trust as described above.

Section 664(d)(1) of the Code sets forth the requirements for a trust to be a charitable remainder annuity trust. Section 664(d)(1)(A) provides that a sum certain (which is not less than 5 percent nor more than 50 percent of the initial net fair market value of all property placed in trust) is to be paid, not less often than annually, to one or more persons (at least one of which is not an organization described in § 170(c) and, in the case of individuals, only to an individual who is living at the time of the creation of the trust) for a term of years (not in excess of 20 years) or for the life or lives of such individual or individuals. Section 664(d)(1)(B) provides that no amount other than the payments described in § 664(d)(1)(A) and other than qualified gratuitous transfers described in § 664(d)(1)(C) may be paid to or for the use of any person other than an organization described in § 170(c).

Section 1.664-2(a)(1)(i) of the Income Tax Regulations provides that, in general, the governing instrument of a CRAT must provide that the trust will pay a sum certain not less often than annually to a person or persons described in § 1.664-2(a)(3) for each taxable year of the period specified in § 1.664-2(a)(5).

Section 1.664-2(a)(3)(i) provides, in part, that the amount described in § 1.664-2(a)(1) must be payable to or for the use of a named person or persons, at least one of which is not an organization described in § 170(c).

Section 1.664-2(a)(4) provides, in part, that no amount other than the amount described in § 1.664-2(a)(1) may be paid to or for the use of any person other than an organization described in § 170(c). The trust may not be subject to a power to invade, alter, amend, or revoke for the beneficial use of a person other than an organization described in § 170(c). The governing instrument may provide that any amount other than the amount described in § 1.664-2(a)(1) shall be paid (or may be paid in the discretion of the trustee) to an organization described in § 170(c) provided that, in the case of distributions in kind, the adjusted basis of the property distributed is fairly representative of the adjusted basis of the property available for payment on the date of payment. It further states that the governing instrument may provide that a portion of the trust assets may be distributed currently, or upon the death of one or more recipients, to an organization described in § 170(c).

Section 1.664–1(e)(1) provides that an amount distributed by a charitable remainder trust to an organization described in § 170(c) other than the annuity or unitrust amount shall be considered as a distribution of corpus and of those categories of income specified in § 1.664–1(d)(1) in an order inverse to that described in § 1.664–1(d)(1). The character of such amounts shall be determined as of the end of the taxable year of the trust in which the distribution is made after the character of the annuity or unitrust amount has been determined.

Based solely on the facts and representations submitted, we rule that the proposed modification of Trust discussed above will not disqualify the CRAT as a CRAT under § 664.

Except as specifically set forth above, no opinion is expressed or implied concerning the federal tax consequences of the facts described above under any other provision of the Code, including whether the CRAT was or is a CRAT under § 664 of the Code.

This ruling is directed only to the taxpayer who requested it. Section 6110(k)(3) provides that it may not be used or cited as precedent.

Pursuant to a power of attorney on file with this office, copies of this letter are being sent to Trust's authorized representatives.

Sincerely yours,
J. THOMAS HINES
Acting Branch Chief, Branch 2
Office of the Associate, Chief Counsel
(Passthroughs and Special Industries)

## Related Topics On Testamentary CRAT and Personal Foundation

**3.1.6 Gifts from an Annuity Trust:**   After the annuity trust has been funded, it is permissible to use the trust corpus to make a current gift. However, the arrangement should be created to avoid the application of the partial interest rules. Sec. 170(f)(3)(A). For example, it would not be appropriate to create a charitable remainder trust on Monday and then give the income interest to charity on Wednesday of the same week. If the gift of an income interest is contemplated, it should generally be made a year or more after creation of the trust.

**6.2.2 Annuity Trust for a Term of Years:**   A charitable remainder annuity trust (CRAT) may be created for a term of years not exceeding 20. Reg. 1.664–2(a)(5)(i). The term of years must be ascertainable at the trust creation and will pay out for the entire term of years selected.





© Copyright 1999-2010 Crescendo Interactive, Inc.

**Internal Revenue Service**

Number: **200420011**
Release Date: 5/14/04
Index Number: 671.00-00, 1001.00-00,
2501.00-00, 2511.00-00,
2601.00-00

Department of the Treasury
Washington, DC 20224

*Trust reformation w/GST*

Person To Contact:
, ID No.
Telephone Number:

Refer Reply To:
CC:PSI:B04 – PLR-121099-03
Date:
January 29, 2004

Legend

Decedent =
Trust =

Daughter 1 =
Daughter 2 =
Daughter 3 =
Daughter 4 =
Son =
Grandchild 1 =
Grandchild 2 =
Grandchild 3 =
Grandchild 4 =
Grandchild 5 =
Grandchild 6 =
Grandchild 7 =
Grandchild 8 =
Grandchild 9 =
Grandchild 10 =
Grandchild 11 =
Grandchild 12 =
Grandchild 13 =
Grandchild 14 =
Grandchild 15 =
Great-Grandchild 1 =
Great-Grandchild 2 =

2

Great-Grandchild 3 =
Great-Grandchild 4 =
Great-Grandchild 5 =
Great-Grandchild 6 =
Great-Grandchild 7 =
Great-Grandchild 8 =
Great-Grandchild 9 =
Great-Grandchild 10 =
Great-Grandchild 11 =
Great-Grandchild 12 =
Great-Grandchild 13 =
Great-Grandchild 14 =
Great-Grandchild 15 =
Great-Grandchild 16 =
Great-Grandchild 17 =
Great-Grandchild 18 =
Date 1 =
Date 2 =
Date 3 =
Date 4 =
Date 5 =
Date 6 =
Date 7 =
Date 8 =
Year 1 =
Company 1 =
Company 2 =
Company 3 =
State =
Statute =
Court =
Amount 1 =
a =
b =
c =

Dear              :

       This responds to your letter dated January 16, 2004, and prior correspondence,
requesting rulings regarding the federal income, gift, and generation-skipping transfer
(GST) tax consequences of a proposed judicial modification of a trust.

3

Facts

The facts submitted and representations made are as follows. Decedent created a revocable trust, Trust, on Date 1 for the benefit of his children and grandchildren. Trust was amended on Date 2, and amended and restated on Date 3. Decedent died on Date 4, and pursuant to Article V of the trust instrument, Trust became irrevocable on that date.

At the time of this ruling request, Decedent has a children, b grandchildren (Grandchild 1 through Grandchild b), and c great-grandchildren (Great-Grandchild 1 through Great-Grandchild c). Under Section 2 of Article III of Trust, at Decedent's death, $1,000,000 was set aside in a "grandchildren's trust share" and subdivided into equal shares for each of grantor's grandchildren (with the exception of Grandchild 12 who was specifically excluded). The net income from each grandchild's share is required to be distributed at least annually to the grandchild for whom it was set aside. There is no provision made for distribution of principal of a grandchild's share. In addition, in the event a grandchild dies before the termination of Trust, the income of the deceased grandchild's share would accumulate because no provision is made for such a contingency. Upon Trust's termination, a grandchild's share will be distributed to the grandchild for whom it was set aside, or if he or she is not then living, to the lineal descendants of such deceased grandchild, or if none, such share will lapse and equally increase the remaining shares in the grandchildren's trust share.

The remainder of Trust's assets were divided into five equal shares for each of the grantor's children, Daughter 1, Daughter 2, Daughter 3, Daughter 4, and Son. The net income from a child's share is required to be distributed at least annually to the child for whom it was set aside.

There is no provision in the trust instrument for distribution of the principal of a child's share in Trust. If a child dies before the termination of Trust, the net income of his or her share would be distributed to those persons appointed by such child in his or her Last Will and Testament. In the event a child dies before the termination of Trust and fails to appoint a person to receive the income from his or her share, the income of the deceased child's share would accumulate because no provision is made for that contingency. Upon termination, the remaining principal and undistributed income of a child's share will be distributed to those persons appointed by such child in his or her Last Will and Testament, or in default thereof, to the then living lineal descendants of such deceased child, per stirpes, or if none, to the then living lineal descendants of Decedent, per stirpes.

Pursuant to Section 4 of Article III, Trust will terminate on the latter of the death of all of the Decedent's children or the expiration of twenty years from the date of Decedent's death.

4

On Schedule R of Decedent's Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, the executor allocated Decedent's $1 million GST exemption to Trust which had assets of $1 million set aside under Trust's instrument. You represent that there have been no additions to Trust since Decedent's death.

Son is the Trustee of Trust. As of Date 7, Trust primarily consisted of Amount 1 shares of Class B voting common stock of Company 1, along with certain other assets.

Starting in Year 1, Decedent's four daughters brought suit against the Trustee for breach of fiduciary duty as the sole trustee of Trust. Since that time, the parties have engaged in extensive litigation, lengthy mediation, and proposed settlement agreements. The parties entered into a settlement agreement on Date 5. Concurrent with this litigation, additional disputes arose and separate litigation occurred with respect to Daughter 1, Son (individually and as Trustee of Trust), Company 1, Company 2, and Company 3. A separate settlement agreement was reached to resolve those matters on Date 8. These settlement agreements, along with a petition for reformation of Trust in order to comply with the terms of those agreements, was submitted to Court for approval.

State Statute provides that if the purposes of a trust have been fulfilled or have become illegal or impossible to fulfill or, if because of circumstances not known to or anticipated by the settlor, compliance with the terms of the trust would defeat or substantially impair the accomplishment of a material purpose of the trust or, if a material purpose of the trust no longer exists, upon the application of a trustee of the trust or any beneficiary a court at any time may modify the terms of a trust which is not then revocable to: (a) amend or change the terms of the trust, including terms governing distribution of the trust income or principal, or terms governing administration of the trust; (b) terminate the trust in whole or in part; (c) direct or permit the trustee to do acts that are not authorized or that are prohibited by the terms of the trust; or (d) prohibit the trustee from performing acts that are permitted or required by the terms of the trust. The taxpayer representatives assert in its Petition for Reformation of Trust and Appointment of Trustees that Court has the authority to modify the terms of Trust pursuant to Statute.

On Date 6, Court approved the following modifications to Trust, subject to a Court order being entered:

1. Trust will be modified to provide that the separate and independent share in Trust of each child and grandchild shall be held as a separate trust and that, except with respect to a grandchild under twenty-five years of age, each child and grandchild shall serve as trustee of his or her respective trust. If a grandchild is under twenty-five, such grandchild's parent who is a lineal descendant of Decedent shall serve as trustee until such grandchild attains

5

the age of twenty-five.  Each child and grandchild shall have the right to appoint an individual or bank or trust company to serve as a co-trustee of his or her separate trust, and each child and grandchild shall have the right to name a successor trustee of his or her trust.

2. Trust will be modified to provide that in the event a grandchild dies before termination of Trust, the income from that deceased grandchild's separate trust shall be distributed, until termination of Trust, to his or her lineal descendants, per stirpes, or in default thereof, to his or her then living siblings and the living lineal descendants of his or her deceased siblings, per stirpes, or in default thereof, the separate trust shall terminate and its assets shall be added to the other grandchildren's separate trusts.

3. Trust will be modified to provide that in the event a grandchild dies before termination of Trust and leaves no living lineal descendants, his or her separate trust shall be distributed, upon the termination of Trust, to such deceased grandchild's then living siblings and the then living lineal descendants of his or her deceased siblings, per stirpes.

4. Trust will provide that, if a child is not living at the time of distribution of income from such child's separate share and the child has not exercised his or her general power of appointment, then the income shall be distributed to his or her then living lineal descendants, per stirpes, or in default there, to the then living lineal descendants of the Decedent, per stirpes.

## RULINGS REQUESTED

1. That Son, in his capacity as Trustee of Trust, a child or a grandchild will not be treated, for federal income tax purposes, as the grantor of such child's or grandchild's separate trust created as a result of the judicial reformation of Trust because the Trustee and such child or grandchild consented to that action which will convert such child's or grandchild's separate and independent share in Trust into a separate trust.

2. The judicial reformation of Trust will not cause Trust, the separate shares of the children and grandchildren in Trust, or the children and grandchildren to realize gain or loss for federal income tax purposes.

3. That neither Son, in his capacity as Trustee, nor a child will be treated as having made a gift for federal gift tax purposes due to the judicial reformation of Trust, or the Son's consent, in his capacity as Trustee, or a child's consent thereto.

6

4. That a grandchild will not be treated as having made a gift for federal gift tax purposes to his or her lineal descendants, his or her siblings or the lineal descendants of his or her deceased siblings because they could receive the income from such grandchild's separate trust in the event that such grandchild dies before the termination of Trust.

5. That a grandchild will not be treated as having made a gift for federal gift tax purposes to his or her siblings or the lineal descendants of his or her deceased siblings because they could receive the remaining principal and undistributed income of such grandchild's separate trust upon the termination of Trust in the event such grandchild dies before the termination of Trust and leaves no living lineal descendants.

6. That the judicial reformation of Trust (and subsequent termination of Trust) will not result in a gift for federal gift tax purposes occurring among the grandchildren because a grandchild's contingent remainder interest, which would vest if another grandchild dies before the termination of Trust leaving no living lineal descendants, becomes less likely to vest.

7. That the judicial reformation of Trust (and subsequent termination of Trust) will not result in a gift for federal gift tax purposes occurring between the great-grandchildren and the grandchildren and children because a great-grandchild's contingent remainder interest, which would vest if a grandchild dies before the termination of Trust becomes less likely to vest.

8. That a grandchild's separate trust will have an inclusion ratio of zero under § 2642 of the Internal Revenue Code, provided that the grandchildren's separate trust share has an inclusion ratio of zero immediately before each share set aside for a grandchild converts to a separate trust for such grandchild.


Ruling Request No. 1 – Grantor Trust

Section 671 provides that where it is specified in subpart E of Part I of subchapter J that the grantor or another person shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account under chapter 1 in computing taxable income or credits against the tax of an individual.

Sections 673 through 678 specify the circumstances under which the grantor or a person other than the grantor is treated as the owner of a portion of a trust.

7

Section 678(a) provides, in general, that a person other than the grantor shall be treated as the owner of any portion of a trust with respect to which (1) such person has a power exercisable solely by himself to vest the corpus or the income therefrom in himself, or (2) such person has previously partially released or otherwise modified such a power and after the release or modification retains such control as would, within the principles of §§ 671 to 677, inclusive, subject a grantor of a trust to treatment as the owner thereof.

Section 1.671-2(e)(1) of the Income Tax Regulations provides that for purposes of subchapter J, a grantor includes any person to the extent such person either creates a trust, or directly or indirectly makes a gratuitous transfer of property to a trust.

Section 1.671-2(e)(2)(i) provides that a gratuitous transfer is any transfer other than a transfer of property for fair market value. A transfer of property to a trust may be considered a gratuitous transfer without regard to whether the transfer is treated as a gift for gift tax purposes.

Based solely on the facts and representations submitted, we conclude that the proposed judicial reformation of Trust will not cause any of the separate trusts to be treated as grantor trusts or cause Son (in his capacity as Trustee) or any of the children or grandchildren of the Decedent to be treated as the grantors or owners of any of the separate trusts.

Ruling Request No. 2 – Gain or Loss

Section 61 provides that gross income means all income from whatever source derived. Section 61(a)(3) provides that gross income includes gains derived from dealings in property.

Section 1001(a) provides that the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in §1011 for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized. Section 1001(b) provides that the amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property. Section 1001(c) provides that, except as otherwise provided in subtitle A, the entire amount of the gain or loss, determined under §1001, on the sale or exchange of property shall be recognized.

Section 1.1001-1(a) provides that the gain or loss realized from the conversion of property into cash, or from the exchange of property for other property differing materially either in kind or in extent, is treated as income or as loss sustained.

8

Rev. Rul. 69-486, 1969-2 C.B. 159, involved two beneficiaries of a trust who by mutual agreement, requested that the trustee distribute all of the trust corpus consisting of notes to one of the beneficiaries and all of the trust corpus consisting of common stock to the other beneficiary. The trust instrument as well as local law was silent regarding whether the trustee had the authority to make such a non-pro rata distribution of property in kind. Because the trustee was not specifically authorized to make an allocation of specific property in kind, the beneficiaries were treated as having an absolute right to a ratable in-kind distribution. Rev. Rul. 69-486 treated the beneficiaries as receiving the notes and common stock pro rata, followed by an exchange between the beneficiaries giving all of the common stock to one and all of the notes to the other. Since, in substance, an exchange between the beneficiaries was deemed to occur, Rev. Rul. 69-486 held that the beneficiaries recognized gain under §§1001 and 1002.

The present case is distinguishable from Rev. Rul. 69-486 because the assets of Trust currently allocated to the separate shares will convert into subtrusts. In addition, the proposed reformation of the trust will only occur if the reformation is expressly permissible under applicable state law and approved by a state court.

In Cottage Savings Ass'n. v. Commissioner, 499 U.S. 554 (1991), the Supreme Court addressed whether a sale or exchange has taken place that results in a realization of gain or loss under §1001. The Court stated that an exchange of property gives rise to a realization event under §1001(a) if the properties exchanged are materially different. Consequently, the Court held that an exchange of mortgages constituted a realization event under §1001(a) because the exchanged interests - loans that were made to different obligors and secured by different homes - were legally distinct entitlements.

In the present case, the issue is whether the children and grandchildren would have the same property interests and legal entitlements as they had before the judicial reformation of Trust. Dividing each separate share in Trust into a subtrust and distributing the assets of the separate shares to subtrusts will not materially affect the children's and grandchildren's interests because although each beneficiary will be entitled to receive income from only one subtrust, the amount of the distributions will be the same as the amount that he or she would have been entitled to receive under Trust.

Additionally, allowing each child and grandchild to serve as trustee of their subtrust is merely a change in the way that the new trusts are administered. The reformation of Trust will not otherwise change the legal entitlements and property interests of any beneficiary because the amounts that will be paid to the beneficiaries will continue to be controlled by the terms of Trust, and the children and grandchildren will be required to continue to exercise the same standard of fiduciary responsibility as the trustee previously exercised with respect to Trust. Consequently, the modification relating to trustees is not a material difference for purposes of §1001 or Cottage Savings.

9

Thus, the judicial reformation of Trust will not be considered a sale, exchange, or other disposition of property of Trust and the children and grandchildren will not realize income under § 61 or gain or loss under §1001.

Ruling Requests No. 3, 4, 5, 6 and 7 – Gift Tax

Section 2501 imposes a tax on the transfer of property by gift by an individual. Section 2511 provides that the tax imposed by § 2501 applies whether the transfer is in trust or otherwise, whether the gift is direct or indirect and whether the property is real or personal, tangible or intangible.

Whether an agreement settling a dispute is effective for gift tax purposes depends on whether the settlement is based on a valid enforceable claim asserted by the parties and, to the extent feasible, produces an economically fair result. See Ahmanson Foundation v. United States, 674 F.2d 761, 774-775 (9th Cir. 1981). Thus, state law must be examined to ascertain the legitimacy of each party's claim. A settlement that fairly reflects the relative merits and economic values of the various claims asserted by the parties and reaches a settlement that is within a range of reasonable settlements will not result in a transfer for gift tax purposes.

We have examined the settlement agreements, in the context of Trust and State law. In applying these standards, we conclude that the terms of the agreements, as approved by the Court order, are within a range of reasonable settlements. Further, the beneficial interests of the beneficiaries are the same, both before and after the proposed transaction, and, accordingly, no transfer of property will be deemed to occur for federal gift tax purposes as a result of the modifications to Trust.

Therefore, based on the facts and representations, we conclude as follows:

1. That neither Son, in his capacity as Trustee, nor a child will be treated as having made a gift for federal gift tax purposes due to the judicial reformation of Trust, or the Son's consent, in his capacity as Trustee, or a child's consent thereto.
2. That a grandchild will not be treated as having made a gift for federal gift tax purposes to his or her lineal descendants, his or her siblings or the lineal descendants of his or her deceased siblings because they could receive the income from such grandchild's separate trust in the event that such grandchild dies before the termination of Trust.
3. That a grandchild will not be treated as having made a gift for federal gift tax purposes to his or her siblings or the lineal descendants of his or her deceased siblings because they could receive the remaining principal and undistributed income of such grandchild's separate trust upon the termination

10

of Trust in the event such grandchild dies before the termination of Trust and leaves no living lineal descendants.

4. That the judicial reformation of Trust (and subsequent termination of Trust) will not result in a gift for federal gift tax purposes occurring among the grandchildren because a grandchild's contingent remainder interest, which would vest if another grandchild dies before the termination of Trust leaving no living lineal descendants, becomes less likely to vest.

5. That the judicial reformation of Trust (and subsequent termination of Trust) will not result in a gift for federal gift tax purposes occurring between the great-grandchildren and the grandchildren and children because a great-grandchild's contingent remainder interest, which would vest if a grandchild dies before the termination of Trust becomes less likely to vest.

Ruling Request No. 8 – GST tax

Section 2601 imposes a tax on every generation-skipping transfer. Under § 1433(a) of the Tax Reform Act of 1986 (Act), the GST tax is generally applicable to generation-skipping transfers made after October 22, 1986. However, under § 1433(b)(2)(A) of the Act and § 26.2601-1(b)(1)(i) of the Generation-Skipping Transfer Tax Regulations, the tax does not apply to any generation-skipping transfer from a trust, if the trust was irrevocable on September 25, 1985, and no addition (actual or constructive) was made to the trust after that date. Under § 26.2601-1(b)(1)(ii), any trust in existence on September 25, 1985, will be considered irrevocable unless the settlor had a power that would have caused inclusion of the trust in his or her gross estate under § 2038 or 2042, if the settlor had died on September 25, 1985.

Under § 2602, the amount of tax imposed under § 2601 is determined by multiplying the taxable amount by the applicable rate. The taxable amount of a taxable distribution is the amount received by the transferee (§ 2621), of a taxable termination is the amount of property with respect to which there was a taxable termination (§ 2622), and of a direct skip is the amount received by the transferee (§ 2623).

Under § 2641, the term "applicable rate" means the product of the maximum federal estate tax rate in the year that the generation-skipping transfer occurs and the inclusion ratio.

Under § 2642(a)(1), the inclusion ratio with respect to any property transferred in a generation-skipping transfer is 1 minus the applicable fraction. Under § 2642(a)(2), in general, the numerator of the applicable fraction is the GST exemption amount allocated to the property transferred and the denominator is the value of the property transferred.

11

Under § 2631, every individual is allowed a GST exemption amount which may be allocated by the individual or the individual's executor to any property with respect to which the individual is the transferor.

Section 2654(b)(2) provides that, for purposes of chapter 13, substantially separate and independent shares of different beneficiaries in a trust are treated as separate trusts. Section 26.2654-1(a) (1) provides that, if a single trust consists solely of substantially separate and independent shares for different beneficiaries, the share attributable to each beneficiary (or group of beneficiaries) is treated as a separate trust for purposes of chapter 13. The phrase "substantially separate and independent shares" generally has the same meaning as provided in § 1.663(c)-3. However, a portion of a trust is not a separate share unless such share exists from and at all times after the creation of the trust. For purposes of this paragraph (a)(1), a trust is treated as created at the date of death of the grantor if the trust is includible in its entirely in the grantor's gross estate for federal estate tax purposes. Further, treatment of a single trust as separate trusts under this paragraph does not permit treatment of those portions as separate trusts for purposes of filing returns and payment of tax or for purposes of computing any other tax imposed under the Code. Also, additions to, and distributions from, such trusts are allocated pro rata among the separate trusts, unless the governing instrument expressly provides otherwise.

Section 26.2654-1(a)(5), Example 1, illustrates a situation where T transfers $100,000 to a trust under which income is to be paid in equal shares for 10 years to T's child, C, and T's grandchild, GC (or their respective estates). The trust does not permit distributions of principal during the term of the trust. At the end of the 10-year term, the trust principal is to be distributed to C and GC in equal shares. The shares of C and GC in the trust are separate and independent and, therefore, are treated as separate trusts. The result would not be the same if the trust permitted distributions of principal unless the distributions could only be made from a one-half separate share of the initial trust principal and the distributee's future rights with respect to the trust are correspondingly reduced. T may allocate part of T's GST exemption under § 2632(a) to the share held for the benefit of GC.

Section 26.2601-1(b)(4)(i) provides rules for determining when a modification, judicial construction, settlement agreement, or trustee action with respect to a trust that is exempt from the GST tax will not cause the trust to lose its exempt status.

Section 26.2601-1(b)(4)(i)(B) provides that a court-approved settlement of a bona fide issue regarding the administration of the trust or the construction of terms of the governing instrument will not cause an exempt trust to be subject to the provisions of chapter 13, if (1) the settlement is the product of arm's length negotiations, and (2) the settlement is within the range of reasonable outcomes under the governing instrument and applicable state law addressing the issues resolved by the settlement. A settlement that results in a compromise between the positions of the litigating parties and reflects

12

the parties' assessments of the relative strengths of their positions is a settlement that is within the range of reasonable outcomes.

Section 26.2601-1(b)(4)(i)(C) provides that a judicial construction of a governing instrument to resolve an ambiguity in the terms of the instrument or to correct a scrivener's error will not cause an exempt trust to be subject to the provisions of chapter 13, if (1) the judicial action involves a bona fide issue, and (2) the construction is consistent with applicable state law that would be applied by the highest court of the state.

Section 26.2601-1(b)(4)(i)(D) provides that a modification will not cause an exempt trust to be subject to the provisions of chapter 13, if the modification does not shift a beneficial interest in the trust to any beneficiary who occupies a lower generation (as defined in § 2651) than the person or persons who held the beneficial interest prior to the modification, and the modification does not extend the time for vesting of any beneficial interest in the trust beyond the period provided for in the original trust. A modification of an exempt trust will result in a shift in beneficial interest to a lower generation beneficiary if the modification can result in either an increase in the amount of a GST transfer or the creation of a new GST transfer.

Section 26.2601-1(b)(4)(i)(E), Example 10, considers a situation where a trust is modified by decreasing the number of trustees. The modification pertains to the administration of the trust and does not shift a beneficial interest in the trust to any beneficiary who occupies a lower generation than the person or persons who held the beneficial interest prior to the modification. In addition, the modification does not extend the time for vesting of any beneficial interest in the trust beyond the period provided for in the original trust. Therefore, the modification will not subject the trust to the provisions of chapter 13.

No guidance has been issued concerning changes that may affect the status of trusts that are exempt from GST tax because sufficient GST exemption was allocated to the trust to result in an inclusion ratio of zero. At a minimum, a change that would not affect the GST status of a grandfathered trust should similarly not affect the exempt status of such a trust.

Trust was included in Decedent's gross estate for federal estate tax purposes. Based on the facts represented, sufficient GST exemption was allocated to the grandchildren's separate shares of Trust on Decedent's death for such shares to have an inclusion ratio of zero under § 2642. You have represented that no additions have been made to Trust since Decedent's death. The proposed judicial modifications to Trust have been approved by Court in order to comply with certain terms of various settlement agreements relating to extensive litigation among the parties. In addition, the trustee modification pertains to certain administrative provisions. Finally, the modifications to Trust do not shift a beneficial interest in Trust to any beneficiary who

PLR-121099-03                                    13

occupies a lower generation than the person or persons who held the beneficial interest prior to the modification and the modification does not extend the time for vesting of any beneficial interest in Trust beyond the period provided for in the original trust.

Accordingly, based on the facts submitted and the representations made, we rule that a grandchild's separate trust will have an inclusion ratio of zero under § 2642, provided that the grandchildren's trust share has an inclusion ratio of zero immediately before each share set aside for a grandchild converts to a separate trust for such grandchild.

Except as specifically ruled herein, we express no opinion on the federal tax consequences of the transaction under the cited provisions or under any other provisions of the Code.

This ruling is directed only to the taxpayer who requested it. Section 6110(k)(3) provides that it may not be used or cited as precedent.

Pursuant to a power of attorney on file with this office, a copy of this letter is being sent to the taxpayer.

Sincerely yours,


By_____
   Lorraine E. Gardner
   Senior Counsel, Branch 4
   Office of the Associate Chief Counsel
   (Passthroughs and Special Industries)


Enclosure
   Copy for section 6110 purposes

cc:

**Internal Revenue Service**

Number: **200429004**
Release Date: 7/16/04
Index Number: 2601.01-00, 2642.00-00

Department of the Treasury
Washington, DC 20224

*Modification of CRAT*

*Qualified severance*

Person To Contact:
                        , ID No.

Telephone Number:

Refer Reply To:
CC:PSI:B04 – PLR-120674-03
Date: MARCH 22, 2004

Re:

Legend:

Date 1                        =
Date 2                        =
Date 3                        =
Grantor                       =
Trust                         =
Trust 1                       =
Trust 2                       =

Trust 3                       =
A                             =
Daughter                      =
Grandchild 1                  =
Grandchild 2                  =
Grandchild 3                  =
Foundation                    =
State                         =
State Statute 1               =
State Statute 2               =

Dear          :

        This is in response to your letter dated December 5, 2003, and prior submissions requesting rulings on the generation-skipping transfer tax effects of the proposed transaction. This letter responds to your request.

        The facts and representations submitted are summarized as follows: On Date 1, Grantor established an irrevocable trust (Trust) for the benefit of Grantor's grandchildren. At the time of the creation of Trust, Daughter had one child, Grandchild 1. Subsequently, Daughter

2

PLR-120674-03

had two additional children, Grandchild 2 and Grandchild 3. The trust was to be divided into separate, equal trusts for each of Grantor's grandchildren. Subsequently, Trust was divided into three separate trusts, Trust 1 for the benefit of Grandchild 1, Trust 2 for the benefit of Grandchild 2, and Trust 3 for the benefit of Grandchild 3 (Grandchildren's Trusts).

Article I, paragraph 1.4 of Trust provides generally, that the trustee will distribute net income or accumulated income or corpus of each trust for the primary beneficiary's support, maintenance and comfort, in such amounts as the trustee in his sole discretion determines. The primary beneficiary is defined as the child of Daughter for whose benefit a separate trust is established.

Article 1, paragraph 1.5 provides generally, that upon the 25th birthday of each primary beneficiary, or upon the 5th anniversary date of the death of Daughter, whichever occurs later, the trustee will pay and distribute free and clear of trust an undivided one-third interest in the respective separate trust corpus.

Article 1, paragraph 1.6 provides that upon the death of a beneficiary the trustee will continue to hold all assets in trust for the lineal descendants of the primary beneficiary, brothers or sisters of the primary beneficiary, spouse of the primary beneficiary, Foundation, or other charitable corporations (but never for the estate or creditors of the primary beneficiary, or for the creditors of the estate of the primary beneficiary) in such amounts and interests as the primary beneficiary shall appoint by his last will and testament. The primary beneficiary may release the power during his lifetime as to part or all of the assets. In the absence of the exercise of the power of appointment, the trust assets will continue to be held in trust for the lineal descendants of the primary beneficiary then living; or, if none, for the primary beneficiary's brothers and sisters then living, in equal shares; or, if none, for the lineal descendants of A, per stirpes, or, if none, for Foundation, to be used solely in State X.

Article 1, paragraph 1.7 provides that the trustee will distribute accumulated income or corpus to the succeeding beneficiaries as set forth in paragraph 1.4.

Article 1, paragraph 1.8 provides that each separate trust will terminate twenty-one years after the death of all of Grantor's grandchildren living at the time of execution of Trust. Upon termination, the trustee will distribute the assets of each separate trust to the then beneficiary of the trust.

The initial trustee of Trusts was an individual trustee. The trust document does not specifically address the number of trustees, but implies that one single trustee will administer the Grandchildren's Trusts.

Following Trust's formation in Year 1, and prior to September 25, 1985, multiple persons transferred assets to Trust. Daughter died on Date 2, after September 25, 1985. Under Daughter's last will and testament, all of her property and estate was devised equally to each of the Grandchildren's Trusts.

Grandchild 1, as executor of Daughter's estate, filed a Form 706, United States Estate (and Generation-skipping Transfer) Tax Return. No Schedule R was filed and the executor did

3

PLR-120674-03

not allocate any generation-skipping transfer tax exemption to any transfer made at death. Daughter did not allocate any GST exemption to any transfers made during her lifetime.

The trustee proposes to petition the appropriate court to modify Trust. A certified public accountant will trace the origin of all transfers to Trust by various transferors. Each of the original separate Grandchildren's Trusts will be severed on a fractional basis. This fractional severance will be accomplished by using an "allocation fraction" as described in § 26.2601-1(b)(1)(iv) of the Generation-Skipping Transfer Tax Regulations. Pursuant to the proposed modification, each of the Grandchildren's Trusts would be divided into two trusts: a GST Non-Exempt Trust consisting of that fraction of each trust attributable to the post-September 25, 1885, additions to the trusts; and a GST Exempt Trust consisting of that fraction of each trust attributable to the pre-September 26, 1985, additions to the trusts. The severed trusts will be funded either: (1) with a pro-rata portion of each asset held by the original, undivided Grandchildren's Trusts; or (2) on a non pro-rata basis provided the funding is based the fair market value of assets on the date of funding. The severed trusts will have terms identical to the respective Grandchildren's Trust. However, each trust will provide that the extraordinary distribution of one-third of the trust assets made to the primary beneficiary after Date 3, will be made from the severed trusts on a non pro-rata basis, such that distributions may be made selectively first from the GST Non-Exempt Trusts rather than from the GST Exempt Trusts.

In addition, the trustee proposes to modify Trust so that the Advisory Board would have the power to name multiple trustees, in order for each of the separate trusts to be administered by a separate trustee.

You have requested the following rulings:

1. The division of the Grandchildren's Trusts will constitute a "qualified severance" under § 2642(a)(3) of the Internal Revenue Code.

2. Following the severance of each of the Grandchildren's Trusts into two trusts, the extraordinary distribution of one-third of the trust assets may be made to the primary beneficiary from the severed trusts on a non pro-rata basis, such that distributions may be made selectively first from the GST non-exempt trusts rather than from the GST exempt trusts.

3. Following the severance of each of the Grandchildren's Trusts into two trusts, all distributions that are permitted under the trust indenture may be made to the beneficiaries from the severed trusts on a non pro-rata basis, such that distributions may be made selectively first from the GST non-exempt trusts rather than from the GST exempt trusts.

4. A judicial modification of the Trust indenture that authorizes the Advisory Board to name multiple trustees, in order for each of the separate trusts to be administered by a separate trustee, will not cause the GST exempt trusts to become subject to chapter 13, as provided in § 26.2601-1(b)(4)(i)(D).

Section 2601 imposes a tax on every generation skipping transfer (GST) made by a "transferor" to a skip person.

4

PLR-120674-03

Under section 1433(a) of the Tax Reform Act of 1986, the GST tax is generally applicable to generation-skipping transfers made after October 22, 1986. However, under section 1433(b)(2)(A) of the Tax Reform Act and § 26.2601-1(b)(1)(i) of the Generation-Skipping Transfer Tax Regulations, the tax does not apply to a transfer from a trust if the trust was irrevocable on September 25, 1985, and no addition (actual or constructive) was made to the trust after that date.

Section 26.2601-1(b)(1)(iv) provides that if an addition is made after September 25, 1985 to a trust which was irrevocable on September 25, 1985, a pro rata portion of subsequent distributions from (and terminations of interests in property held in) the trust is subject to the GST tax provisions. If an addition is made, the trust is thereafter deemed to consist of two portions, a portion not subject to the GST tax and a portion subject to the GST tax. The non-chapter 13 portion represents the value of all assets of the trust as it existed on September 25, 1985. The applicable fraction (as defined in section 2642(a)(2)) for the non-chapter 13 portion is deemed to be one and the inclusion ratio (as defined in section 2642(a)(1)) is zero. The chapter 13 portion of the trust represents the value of all additions to the trust made after September 25, 1985. The inclusion ratio of the chapter 13 portion is determined under § 2642.

Section 26.2601-1(b)(4)(i) provides rules for determining when a modification, judicial construction, settlement agreement, or trustee action with respect to a trust that is exempt from the GST tax under section 1433(b)(2)(A) of the Tax Reform Act and § 26.2601-1(b)(1), (2) or (3) of the Generation-Skipping Transfer Tax Regulations will not cause the trust to lose its exempt status.

Section 26.2601-1(b)(4)(i)(D) provides that a modification of the governing instrument of an exempt trust by judicial reformation, or non-judicial reformation that is valid under applicable state law, will not cause an exempt trust to be subject to the provisions of chapter 13, if the modification does not shift a beneficial interest in the trust to any beneficiary who occupies a lower generation (as defined in section 2651) than the person or persons who held the beneficial interest prior to the modification, and the modification does not extend the time for vesting of any beneficial interest in the trust beyond the period provided for in the original trust.

Under section 2602, the amount of the GST tax is determined by multiplying the taxable amount by the applicable rate. Under section 2641, the applicable rate is the maximum rate of tax on an estate tax transfer, multiplied by the "inclusion ratio." The inclusion ratio is defined in § 2642 as the excess of 1 over the applicable fraction for the trust from which the transfer is made or for the direct skip. The applicable fraction is a fraction in which the numerator is the GST exemption (allowable under § 2631) allocated to the trust or direct skip, and the denominator is the value of the property transferred to the trust or involved in the direct skip, reduced by any Federal estate tax or state death tax actually recovered from the trust and any charitable deduction allowed under § 2055 or § 2522 with respect to such property.

Under § 2631(a), for purposes of determining the inclusion ratio, in the case of estate's of decedents dying prior to December 31, 2003, every individual is allowed a GST exemption of $ 1,000,000, adjusted for inflation as provided in § 2631(c), which may be allocated by the individual (or the individual's executor) to any property with respect to which the individual is the transferor for GST tax purposes.

5

Section 2632(a) provides that any allocation by an individual of his or her GST tax exemption under § 2631(a) may be made at any time on or before the date prescribed for filing the estate tax return for such individual's estate regardless of whether such a return is required to be filed.

Section 2632(e) provides that any portion of an individual's GST exemption which has not been allocated within the time prescribed by § 2632(a) shall be deemed to be allocated: first, to property which is the subject of a direct skip occurring at such individual's death; and second, to trusts with respect to which such individual is the transferor and from which a taxable distribution or a taxable termination might occur at or after such individual's death.

Under § 2642(a)(3)(A), if a trust is severed in a qualified severance, the trusts resulting from such severance will be treated as separate trusts for purposes of generation-skipping transfer tax. Section 2642(a)(3)(B) provides that a "qualified severance" means the division of a single trust and the creation (by any means available under the governing instrument or local law) of two or more trusts if the single trust was divided on a fractional basis, and the terms of the new trusts, in the aggregate, provide for the same succession of interests of beneficiaries as are provided in the original trust. If a trust has an inclusion ratio of greater than zero and less than one, a severance is a qualified severance only if the single trust is divided into two trusts, one of which receives a fractional share of the total value of all trust assets equal to the applicable fraction of the single trust immediately before the severance. In such case, the trust receiving such fractional share will have an inclusion ratio of zero and the other trust will have an inclusion ratio of one. Under § 2642(a)(3)(C), a qualified severance may be made at any time.

Under section 2652(a)(1), for purposes of chapter 13, the term "transferor" means the decedent, in the case of any property subject to tax imposed by chapter 11 and, the donor, in the case of any property subject to tax imposed by chapter 12. Section 26.2652-1(a)(1) provides that the individual with respect to whom property was most recently subject to federal estate or gift tax is the transferor of that property for purposes of chapter 13.

Under section 26.2654-1(a)(2)(i), if there is more than one transferor with respect to a trust, the portions of the trust attributable to the different transferors are treated as separate trusts for purposes of chapter 13. Section 26.2654-1(a)(4)(i) provides that with respect to a portion of a trust treated as a separate trust under § 26.2654-1(a)(2), an individual's GST exemption is allocated to the separate trust.

State Statute 1 provides that the Trustee may, unless expressly prohibited by the terms of the instrument establishing the trust, divide a trust into two or more separate trusts without a judicial proceeding, if the trustee reasonably determines that the division of the trust could result in a significant decrease in current or future federal income, gift, estate, generation-skipping transfer taxes, or any other tax imposed on property. If the trustee divides the trust, the terms of the separate trusts must be identical to the terms of the original trust, but differing tax elections may be made for the separate trusts.

6

PLR-120674-03

State Statute 2 provides that upon the petition of a trustee or beneficiary, a court may order that the terms of the trust be modified, if, because of circumstances not known or anticipated by the settlor, compliance with the terms of the trust would defeat or substantially impair the accomplishment of the purposes of the trust.

In the instant case, each Grandchildren's Trust was irrevocable on September 25, 1985. However, under the terms of Daughter's will her residuary estate was distributed equally to each trust on her death after September 25, 1985, such that under §26.2601-1(b)(1)(iv) a pro rata portion of each Grandchildren's Trust is subject to the GST tax. Under § 26.2654-1(a)(2)(i), that portion of each Grandchildren's Trust attributable to Daughter's bequest is treated, for GST tax purposes, as a separate trust with respect to which Daughter is the transferor. Under § 26.2654-1(a)(4)(i), and § 2632(e), Daughter's available GST exemption was automatically allocated equally to each of these separate trusts, and the inclusion ratio for each separate trust is determined under § 2642.

Each Grandchildren's Trust will be severed into two trusts, a GST Exempt Trust and a GST Non-Exempt Trust. The trusts will be severed on a fractional basis determined in accordance with § 26.2601-1(b)(1)(iv). Each GST Exempt Trust and GST Non-Exempt Trust , will provide for the same succession of interests of beneficiaries as is provided prior to severance. Further, the severance of each trust, as proposed will not result in shifting a beneficial interest in the GST Exempt Trust and GST Non-Exempt Trust to any beneficiary who occupies a lower generation (as defined in section 2651) than the person who held the beneficial interest prior to the severance. Further, the proposed severance will not extend the time for vesting of any beneficial interest in the severed trusts beyond the period provided for in the original trust prior to severance.

In addition, the trustee will petition the court to permit the Advisory Board to appoint additional trustees, so that each individual trust may have a separate trustee. The modification is permitted under State law. Further, the modification does not shift a beneficial interest in the trust to any beneficiary who occupies a lower generation (as defined in § 2651) than the person or persons who held the beneficial interest prior to the modification, and the modification does not extend the time for vesting of any beneficial interest in the trust beyond the period provided for in the original trust.

Accordingly, we rule as follows:

1. The division of each Grandchildren's Trust into a GST-Exempt Trust and a GST Non-Exempt Trust will not cause the GST-Exempt Trusts to become subject to chapter 13, as provided in § 26.2601-1(b)(4)(i)(D). Further, the severance constitutes a qualified severance for purposes of § 2642(a)(3). The inclusion ratio for each GST Non-Exempt Trust will be determined under § 2642 based on the value of the property transferred to each Grandchildren's Trust as of Date 2, and the amount of Daughter's GST exemption that was automatically allocated to the portion of each Grandchildren's Trust attributable to Daughter's bequest that is treated, for GST tax purposes, as a separate trust under § 26.2654-1(a)(2) ( with respect to which Daughter is the transferor).

2. Following the severance of each of the Grandchildren's Trusts into two trusts, the extraordinary distribution of one-third of the trust assets may be made to the primary beneficiary

PLR-120674-03           7

from the severed trusts on a non pro-rata basis, such that distributions may be made selectively first from the GST Non-Exempt Trusts rather than from the GST Exempt Trusts.

     3. Following the severance of each of the Grandchildren's Trusts into two trusts, all distributions that are permitted under the trust indenture may be made to the beneficiaries from the severed trusts on a non pro-rata basis, such that distributions may be made selectively first from the GST Non-Exempt trusts rather than from the GST Exempt Trusts.

     4. A judicial modification of the Trust indenture that authorizes the Advisory Board to name multiple trustees, in order for each of the separate trusts to be administered by a separate trustee, will not cause the GST Exempt Trusts to become subject to chapter 13, as provided in § 26.2601-1(b)(4)(i)(D).

     The rulings contained in this letter are based upon information and representations submitted by the taxpayer and accompanied by a penalty of perjury statement executed by an appropriate party. While this office has not verified any of the material submitted in support of the request for rulings, it is subject to verification on examination.

     Except as specifically ruled herein, we express or imply no opinion on the federal tax consequences of the transaction under the cited provisions or under any other provisions of the Code.

     These rulings are directed only to the taxpayers requesting it. Section 6110(k)(3) provides that it may not be used or cited as precedent.

     Sincerely,


     _____
     George L. Masnik
     Chief, Branch 4
     Associate Chief Counsel
     (Passthroughs and Special Industries)

Enclosures
     Copy for section 6110 purposes

cc: