IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

FLOYD HOBBS, JR.
and CYNTHIA BEVINGTON                                                            PLAINTIFFS

V.                                                         CIVIL ACTION NO. 3:09-CV-9-SA-DAS

LEGG MASON INVESTMENT COUNSEL
& TRUST CO., N.A.                                                                 DEFENDANT

## MEMORANDUM OPINION

For the reasons stated below, the Court grants Defendant's Motion for Partial Summary Judgment [73] as to Plaintiffs' claims for generation-skipping transfer tax liability, stock liquidation losses, and emotional damages. The Court defers ruling on Defendant's Motion for Partial Summary Judgment [73] as to Plaintiffs' claim for punitive damages. Further, the Court finds Defendant's Motions to Exclude Expert Testimony [74, 75] to be moot.

## I. BACKGROUND

This case concerns the administration of trusts formed pursuant to the Last Will and Testament of Edward H. Johnson (the Will), a resident of Tennessee. Upon Johnson's death on December 31, 1994, the Will provided for the establishment of a marital trust for the benefit of his wife, Bernice Johnson – the "Edward and Bernice Johnson Charitable Trust." Lawrence Glover and First American Trust Company were appointed co-trustees, and they allocated the assets of the marital trust into two legally distinct trusts. One contained the $949,626.00 of assets exempt from generation-skipping transfer (GST) tax liability, while the other contained the $18,042,895.00 of assets not exempt from GST tax liability.

Bernice Johnson died in January 1998. Upon her death, the assets of the marital trusts were used to create charitable trusts. Like the marital trusts, there were two charitable trusts – one

comprised of assets exempt from GST tax liability (the Exempt Trust), and one comprised of assets not exempt from GST tax liability (the Non-Exempt Trust). The charitable trusts had eight original non-charitable income beneficiaries and three charitable remainder beneficiaries. All eight original income beneficiaries were nieces and nephews of Edward and Bernice Johnson, and one of them was Peggy Grow, Plaintiffs' mother. The three remainder beneficiaries were Belmont University, the Salvation Army, and McKendree Manor. The charitable trusts were to extend for ten years, during which time the income beneficiaries would receive distributions. After ten years, the charitable trusts were to terminate, and all assets would pass to the remainder beneficiaries.

In 2001, Defendant became a successor co-trustee to First American Trust Company. Defendant would remain a co-trustee until the termination of the trusts on January 26, 2008.

In January 2004, Peggy Grow died. According to the terms of the Will, Plaintiffs became income beneficiaries of the charitable trusts. The distribution amount allocated to their mother was divided between them on a *per stirpes* basis for the remainder of the charitable trusts' ten-year term. Accordingly, Plaintiffs received distributions during the tax years 2004, 2005, 2006, 2007, and 2008 as "skip beneficiaries." Unlike their deceased mother and the remaining seven original income beneficiaries, Plaintiffs were subject to GST tax liability.

On March 3, 2008, following the termination of the charitable trusts, Defendant advised Plaintiffs that certain distributions made during the 2004, 2005, 2006, and 2007 tax years were subject to a GST tax. Specifically, distributions from the Non-Exempt Trust were subject to the tax, while distributions from the Exempt Trust were not. This was the first time Defendant advised Plaintiffs of any tax liability attached to the distributions from the charitable trusts, as Defendant did not realize during the trusts' term that Plaintiffs owed GST taxes.

2

Accordingly, Plaintiffs owed back taxes and interest due to their failure to pay GST tax when they received distributions from the Non-Exempt Trust. As neither Plaintiff had sufficient liquid assets to pay the amount owed, they each obtained a line of credit secured by assets in a separate trust established by their mother (the "Stock Trusts"). Thereafter, Plaintiffs paid the back taxes and interest owed with funds acquired through their lines of credit. Plaintiff Hobbs paid GST taxes of $434,840.00 and late payment interest of $69,167.00, and Plaintiff Bevington paid GST taxes of $434,840.00 and late payment interest of $69,137.00. The IRS abated the penalties levied against Plaintiff Hobbs. However, it only abated Plaintiff Bevington's penalties for tax year 2005, and she has resubmitted her request to abate the penalties for tax years 2004 and 2006. Neither Plaintiff was assessed a penalty for tax years 2007 or 2008.

In order to repay the line of credit secured to pay the back tax liability, Plaintiff Hobbs – as trustee for the Stock Trusts – liquidated shares of PepsiCo stock. Both Plaintiffs signed promissory notes to the Stock Trusts for the liquidated shares, which they have not fulfilled.

On January 21, 2009, Plaintiffs filed their Complaint, alleging causes of action of breach of fiduciary duty and negligence. Plaintiffs claim that Defendant's actions and/or omissions have caused emotional injuries; actual financial loss in the form of interest and penalties assessed by the IRS, GST tax liability, attorney's and accountant's fees, and lost value of stocks liquidated to cover the GST tax liability. Defendant filed its Motion for Partial Summary Judgment [73], Motion to Exclude the Testimony of Mark Hartnett [74], and Motion to Exclude the Testimony of Roderick Russ [75] on October 11, 2010.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence shows that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." Salinas v. AT&T Corp., 314 F. App'x 696, 697 (5th Cir. 2009) (quoting FED. R. CIV. P. 56(c)). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

If a movant shows that there is no genuine issue of material fact, the nonmovant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting FED. R. CIV. P. 56(c), (e)). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

### III. CHOICE OF LAW

The substantive legal issue in this case is what duty Defendant owed to Plaintiffs as the trustee for two trusts of which Plaintiffs were beneficiaries. Defendants argue that Mississippi law

4

should apply. While Plaintiffs failed to include a choice of law analysis in their brief, they applied Tennessee law. Therefore, the Court must first determine which state's law to apply.

A United States District Court hearing a diversity suit is to apply the choice of law analysis of the state in which the action is brought. Cherokee Pump & Equip. Inc. v. Aurora Pump, 38 F.3d 246, 250 (5th Cir. 1994) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 587, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). Mississippi "resolves choice of law issues by applying the following steps: (1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws." Hartford Underwriters Ins. Co. v. Found. Health Servs., 524 F.3d 588, 593 (5th Cir. 2008) (citing Zurich Am. Ins. Co. v. Goodwin, 920 So. 2d 427, 433-34 (Miss. 2006)). Few Mississippi laws are "classified as procedural." Id. Indeed, the Mississippi Supreme Court has only labeled rules of evidence and procedure, statutes of limitations, and awards of attorney's fees and interest as procedural in nature. Id. (citing Zurich, 920 So. 2d at 433). Plaintiffs assert causes of action for negligence and breach of fiduciary duty. The primary issue is whether Defendant breached its duty of care as trustee for the trusts of which Plaintiffs were beneficiaries. Accordingly, this case concerns substantive issues of tort law.

Mississippi applies the "center of gravity" rule to tort matters, an analysis "which focuses on 'which state has the most substantial contacts with the parties and the subject matter of the action.'" Williamson Pounders Architects PC v. Tunica County, Miss., 597 F.3d 292, 295 (5th Cir. 2010) (quoting Boardman v. United Servs. Auto. Ass'n, 470 So. 2d 1024, 1031 (Miss. 1985)); see also Huss v. Gayden, 571 F.3d 442, 450 (5th Cir. 2009) (citing Mitchell v. Craft, 211 So. 2d 509, 515 (Miss. 1968)). The Court "must consider the place of injury, the place where the negligent conduct

5

occurred, the domicile or residence of the parties, and the place where the parties' relationship is centered." Huss, 571 F.3d at 450 (citing Price v. Litton Sys., Inc., 784 F.2d 600, 603 (5th Cir. 1986)). "[T]he law of a single state does not necessarily control all of the issues in the case; instead, the center of gravity approach must be applied to each issue presented." Williamson Pounders Architects PC, 597 F.3d at 296 (citing Boardman, 470 So. 2d at 1031). However, if a state other than Mississippi is more closely related to the parties and subject matter of a case but that state's law is "contrary to [Mississippi's] deeply ingrained and strongly felt public policy," Mississippi courts must apply Mississippi law. Id.

In the present matter, Plaintiff Cynthia Bevington is a resident of Tennessee, while Plaintiff Floyd Hobbs, Jr. is a resident of Mississippi. Defendant is incorporated and has its primary place of business in Maryland. Therefore, the domicile or residence of the parties is of little consequence to the Court's choice of law analysis, as three different states are implicated by that factor. Furthermore, as Plaintiffs reside in two different states, the alleged loss arguably did not occur "in a single, clearly ascertainable, state." Dale v. ALA Acquisitions I, Inc., 434 F. Supp. 2d 423, 435 (S.D. Miss. 2006), aff'd in part, 595 F.3d 219 (5th Cir. 2010). Therefore, the location of injury is of little import. Id. (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAWS §§ 6, 145 (1971)).

However, the trusts at issue were formed pursuant to the will of a Tennessee resident who expressly provided that the operation of the trusts should be governed by Tennessee law. Mississippi courts "will generally give effect to an express agreement that the laws of a specific jurisdiction shall govern, particularly where some material element of the contract has a real relation to, or connection with, such jurisdiction." Williamson Pounders Architects PC, 597 F.3d at 295 (quoting Miller v. Fannin, 481 So. 2d 261, 262 (Miss. 1985)). "This general principle is 'respected in the absence of

6

anything violating the public policy of the forum jurisdiction.'" Id. Defendant has not identified any way in which Tennessee law concerning the duties of trustees violates the public policy of Mississippi. Accordingly, the Court shall apply Tennessee law.

## IV. MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant seeks summary judgment as to four elements of damages sought by Plaintiffs. The Court shall address each element of damages in turn, but the Court must first highlight the key features of Tennessee's Uniform Trust Code (UTC). The UTC provides that trustees "shall administer the trust . . . in accordance with [the trust's] terms and purposes and in the interests of the beneficiaries, and in accordance with this chapter." TENN. CODE ANN. § 35-15-801. Further, "[a] trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill and caution." TENN. CODE ANN. § 35-15-804. "A trustee who has special skills or expertise, or is named trustee in reliance upon the trustee's representation that the trustee has special skills or expertise, shall use those special skills or expertise." TENN. CODE ANN. § 35-15-806. "A trustee shall keep the beneficiaries of the trust who are current . . . distributees of trust income or principal, or both, reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." TENN. CODE ANN. § 35-15-813(a)(1).

In addition to the duties prescribed by the UTC, Tennessee also applies the standard of care of the Uniform Prudent Investor Act (UPIA) to trustees. TENN. CODE ANN. § 35-15-901. The UPIA mirrors the UTC, providing that a "trustee shall . . . manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust.

7

In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." TENN. CODE ANN. § 35-14-104(a). Trustees may consider the "expected tax consequences of investment decisions or strategies" and "other resources of the beneficiaries." TENN. CODE ANN. §§ 35-14-104(c)(3), (6). "A trustee shall make a reasonable effort to verify facts relevant to the investment and management of trust assets." TENN. CODE ANN. § 35-14-104(d). "A trustee who has special skills or expertise, or is named trustee in reliance upon the trustee's representation that the trustee has special skills or expertise, has a duty to use those special skills or expertise." TENN. CODE ANN. § 35-14-104(f). "A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries." TENN. CODE ANN. § 35-14-107. "If a trust has two (2) or more beneficiaries, the trustee shall act impartially in investing and managing the trust assets, taking into account any differing interests of the beneficiaries." TENN. CODE ANN. § 35-14-108.

Regardless of the breadth of discretion granted to a trustee by the terms of the trust, the UTC provides that "the trustee shall exercise a discretionary power in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." TENN. CODE ANN. § 35-15-814(a). Generally, trustees may exercise powers "conferred by the terms of the trust." TENN. CODE ANN. § 35-15-815(a)(1). They may also exercise any "power appropriate to achieve the proper investment, management, and distribution of the trust property" and any other powers conferred by the Uniform Trust Code, except as limited by the trust's terms. TENN. CODE ANN. §§ 35-15-815(a)(2)(B), (C). However, any exercise of power by the trustee is subject to his fiduciary duties. TENN. CODE ANN. § 35-15-815(b).

The UTC specifically grants many powers to trustees. See TENN. CODE ANN. § 35-15-816. "On distribution of trust property or the division or termination of a trust, [a trustee may] make

8

distributions in divided or undivided interests, allocate particular assets in proportionate or disproportionate shares, value the trust property for those purposes, and adjust for resulting differences in valuation and basis for income tax purposes." TENN. CODE ANN. § 35-15-816(b)(22). Additionally, "[a] proceeding to approve or disapprove a proposed modification . . . may be commenced by a trustee or beneficiary." TENN. CODE ANN. § 35-15-410(b).

However, nothing within Tennessee's Uniform Trust Code "is intended to create or imply a duty for a trustee to make or seek approval of a modification . . . , and a trustee is not liable for not making or seeking approval of a modification . . . ." TENN. CODE ANN. § 35-15-410(c). Further, "[a] trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance." TENN. CODE ANN. § 35-15-1006.

Tennessee's courts have applied the same principles. The Tennessee Court of Appeals observed that a "trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property; and if the trustee has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill as he has." Clark v. Am. Nat'l Bank & Trust Co., 531 S.W.2d 563, 568 (Tenn. Ct. App. 1974). Tennessee courts "require the utmost good faith from trustees." Treadwell v. KcKeon, 66 Tenn. 445, 450 (Tenn. 1874).

### A. *Generation-Skipping Transfer (GST) Tax Liability*

Defendant first argues that it did not breach any duty to Plaintiffs in its administration of the trusts and, therefore, should not be liable for the GST tax liability. Defendants present many arguments, but the crux of Defendant's argument is that it had no duty to seek a modification of the

9

trusts, as Plaintiffs contend. It is not necessary for the Court to address each of Defendant's arguments, as Tennessee Code explicitly provides that while a trustee has the power to seek a modification of the trust, it has no duty to do so and may not be liable for failing to do so. TENN. CODE ANN. § 35-15-410(c). Plaintiffs do not dispute that Defendant abided by the terms of the trust. Plaintiffs' entire theory of liability is premised upon the argument that Defendants had a duty to seek a modification of the trust to minimize GST tax liability. According to Tennessee law, Defendant had no such duty. Accordingly, the Court grants Defendant's Motion for Partial Summary Judgment [73] as to the GST tax liability.

## B.     *Stock Liquidation Losses*

Next, Defendants contend that summary judgment is appropriate as to Plaintiffs' claim for alleged losses incurred upon the sale of PepsiCo stock to repay a line of credit incurred to pay the tax liability. Initially, the Court notes that Defendant is not liable for Plaintiffs' GST tax liability, and, therefore, it stands to reason that Defendant should not be liable for losses incurred by the means Plaintiffs utilized to discharge that liability. However, as Plaintiffs used the stock liquidation proceeds to pay interest on the GST taxes – an element of damages which Defendant has not challenged in the present motion – the Court must address Defendant's arguments on this point.

Defendant first argues that Plaintiffs lack standing to pursue damages, in that assets held by a trust belong to the trust for purposes of legal redress. Gregory v. Merchants State Bank, 135 S.W.2d 465, 474 (Tenn. Ct. App. 1939) ("It is the right and duty of the trustee, and of him alone, to proceed by suit, or other legal proceeding, if necessary, to collect or reduce to possession the property and assets belonging to the trust estate."). Plaintiff Hobbs, in his capacity as trustee for the "Stock Trust," ratified Plaintiffs' prosecution of this matter. Accordingly, any alleged lack of

10

standing has been cured. See FED. R. CIV. P. 17(a)(3).

Next, Defendant offers a trio of arguments which all suggest that a plaintiff who has been injured may not recover for a potential future economic loss due to the sale of an asset to repair his injury. Tennessee allows a tort plaintiff to pursue damages for a loss due to an "economically less advantageous sale." Mid-South Indus., Inc. v. Martin Mach. & Tool, Inc., 2010 Tenn. App. LEXIS 208, at *26-*28 (Tenn. Ct. App. Mar. 19, 2010). However, the Tennessee court's decision in Mid-South Indus., Inc. concerned a "economically less advantageous" sale that *had already taken place* – not a potential sale, as implicated by Plaintiffs' claims. Id. The Tennessee Supreme Court has held that "to recover for future effects of an injury, the future effects must be shown to be reasonably certain and not a mere likelihood or possibility . . . ." Potts v. Celotex Corp., 796 S.W.2d 678, 681 (Tenn. 1990) (citing Maryland Casualty Co. v. Young, 362 S.W.2d 241, 243 (Tenn. 1962); Williams v. Daniels, 344 S.W.2d 555, 559 (Tenn. 1960)).

Plaintiffs' pursuit of damages for the potential loss in value of their PepsiCo stock is predicated upon the assumption that Plaintiffs will repurchase the same number of PepsiCo shares at some point in the future and that the price per share will be greater then than it was when Plaintiffs liquidated the shares in the "Stock Trust." Plaintiffs' own expert – Roderick Russ – admitted that if the price of PepsiCo stock drops below the price at which Plaintiffs' sold their shares, Plaintiffs would, in fact, realize no loss from the sale. Accordingly, Plaintiffs have not shown that their "stock liquidation loss" is reasonably certain and more than a mere likelihood or possibility. The Court grants Defendant's Motion for Summary Judgment [73] as to any potential "stock liquidation losses."

### C. *Emotional Damages*

Plaintiff Bevington concedes her claim for emotional damages, and Defendant argues that Plaintiff Hobbs may not recover emotional damages under Tennessee law. Plaintiff Hobbs has presented claims of negligence and breach of fiduciary duty. His claim for emotional damages is not a separate cause of action. It is only an element of damages arising from his general tort claims. See Estate of Amos v. Vanderbilt Univ., 62 S.W.3d 133, 137 (Tenn. 2001). "When emotional damages are a 'parasitic' consequence of negligent conduct that results in multiple types of damages, there is no need to impose special pleading or proof requirements that apply to 'stand-alone' emotional distress claims." Id. Therefore, Tennessee does not impose the stringent evidentiary requirements applied to "stand-alone" claims for emotional injuries – such as negligent or intentional infliction of emotional distress – on claims such as Plaintiff's. However, the Tennessee Supreme Court has also held:

> Subject to some exceptions, generally, under ordinary circumstances, there can be no recovery for mental anguish suffered by plaintiff in connection with an injury to his or her property. Where, however, the act occasioning the injury to the property is inspired by fraud, malice, or like motives, mental suffering is a proper element of damage.

Whaley v. Perkins, 197 S.W.3d 665, 670 (Tenn. 2006) (quoting 25 C.J.S. Damages § 99 (2002)). Plaintiff has not asserted any fraud, malice, or like motives on Defendant's part. Indeed, Plaintiff's causes of action sound in negligence. Accordingly, Plaintiff Hobbs may not recover emotional damages. The Court grants Defendant's Motion for Partial Summary Judgment [73] as to Plaintiffs' claims for emotional damages.

### D. *Punitive Damages*

In Tennessee, to be entitled to an award of punitive damages, a plaintiff must prove by clear

and convincing evidence that the defendant "acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992). Punitive damages "are intended to 'punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him.'" Goff v. Elmo Greer & Sons Const. Co., 297 S.W.3d 175, 187 (Tenn. 2009) (quoting Huckeby v. Spangler, 563 S.W.2d 555, 558-59 (Tenn. 1978)). Therefore, they are available in "cases involving only the most egregious of wrongs." Hodges, 833 S.W.2d at 901.

Plaintiffs do not allege any intentional, fraudulent, or malicious acts by Defendant. Therefore, to recover punitive damages Plaintiffs must offer evidence that Defendants acted recklessly. "A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." Id. (citing TENN. CODE ANN. § 39-11-302(c)).

The Court defers its decision regarding punitive damages until it has heard the evidence at trial concerning the liability portion of Plaintiffs' case. The Court expects the parties to be prepared to present Tennessee law in support of their arguments. Specifically, the Court expects the parties to present case law addressing whether Defendants' actions and/or inactions were sufficient to meet the "conscious disregard" standard cited above.

## V. MOTIONS TO EXCLUDE EXPERT TESTIMONY

As the Court granted Defendants' Motion for Partial Summary Judgment in part, much of the expert testimony Plaintiffs intended to present is irrelevant to their remaining elements of damages. Thus, the Court finds Defendants' Motions to Exclude Expert Testimony [74, 75] moot.

The parties may urge further contentions as to what portions of the expert testimony are now irrelevant by motion in limine prior to trial.

## VI. CONCLUSION

For all the reasons stated above, the Court grants Defendant's Motion for Partial Summary Judgment [73] as to Plaintiffs' claims for generation-skipping transfer tax liability, stock liquidation losses, and emotional damages. The Court defers ruling on Defendant's Motion for Partial Summary Judgment [73] as to Plaintiffs' claim for punitive damages. Defendant's Motions to Exclude Expert Testimony [74, 75] are moot. An order consistent with this opinion shall be entered on this day.

SO ORDERED, this the 5th day of January, 2011.

 **/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**