IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

FLOYD HOBBS, JR.
and CYNTHIA BEVINGTON                                      **PLAINTIFFS**

VS.                                          CIVIL ACTION NO. 3:09cv009-SA-DAS

LEGG MASON INVESTMENT COUNSEL
& TRUST CO., N.A.                                          **DEFENDANT**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR RECONSIDERATION ORDER
ON MOTIONS [92] AND MEMORANDUM  OPINION [93] OF OPINION [93]**

**ORAL ARGUMENT REQUESTED**

COME NOW, Plaintiffs, Floyd Hobbs, Jr. and Cynthia Bevington, by and through the

undersigned counsel and pursuant to the Federal Rules of Civil Procedure, and file this

Memorandum in Support of Motion for Reconsideration of Opinion [93].

*A.  Standard of Review*

Fed. R. Civ. P. 59(e) provides a means by which a party may seek reconsideration of an

order granting summary judgment against it.  Williams v. Lyondell Citgo Refininig, Co., Ltd.,

247 So. 2d 466, 471 (5th Cir. 2007). Rule 59(e) "serves the narrow purpose of allowing a party to

correct manifest errors of law or fact or to present newly discovered evidence." Templet v.

Hydrochem, Inc., 367 F.3d at 479 (citing Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th

Cir.1989)). A motion brought pursuant to Rule 59(e) "must clearly establish either a manifest

error of law or fact or must present newly discovered evidence" that was not available before the

judgment issued.  *See* Schiller v. Physicians Res. Group Inc., 342 F.3d 563, 56768 (5th Cir.2003)

-1-

(citing <u>Rosenzweig v. Azurix Corp.</u>, 332 F.3d 854, 86364 (5th Cir.2003)).

The instant Rule 59(e) motion is brought by Plaintiffs for the purpose of correcting manifest errors of law and fact found in the Court's Memorandum Opinion [93] granting Defendant's Motion for Partial Summary Judgment [73] as to Plaintiffs' claims for generation-skipping transfer tax liability, stock liquidation losses, and emotional damages.

**B.** **_GST Tax Liability_**

With all due deference, the Court has failed to consider Plaintiffs' argument as to Legg Mason's liability for the generation-skipping transfer (GST) taxes at issue in this case. On page 10 of its Memorandum Opinion, the Court states: "Plaintiffs' entire theory of liability is premised upon the argument that Defendants had a duty to seek a modification of the trust to minimize GST tax liability." This is not Plaintiffs' theory of liability. Although Legg Mason was vested with the power to seek a warranted modification of the trust, Plaintiffs' theory of liability lies elsewhere.

The argument set forth in Plaintiffs' Memorandum in Support of Response to Defendant's Motion for Partial Summary Judgment [76] was and still is that Legg Mason failed in its fiduciary duty to inform the Plaintiffs that (1) they would be subject to GST tax liability and (2) that they, as the adversely affected beneficiaries, were entitled to seek a modification of the trust instrument as a means of minimizing or avoiding GST tax liability. It is Legg Mason's failure to keep Plaintiffs reasonably informed of the material facts necessary for them to protect their interests, pursuant to Tenn. Code Ann. §35-15-813(a)(1), that constitutes the actionable breach of fiduciary duty in this case and it is that failure which renders Legg Mason liable for the generation-skipping transfer (GST) taxes that were unnecessarily imposed upon Plaintiffs in tax

-2-

years 2004-08.

In its Memorandum Opinion, the Court correctly cited Tenn. Code Ann. §35-15-813(a)(1) for the proposition that "A trustee shall keep the beneficiaries of the trust who are current ... distributees of trust income or principal, or both, reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests" [93] p.7 and Tenn. Code Ann. § 35-15-410(b) for the proposition that "[a] proceeding to approve or disapprove a proposed modification ... may be commenced by a trustee **or beneficiary**" [93] p. 9 (emphasis added). However, it does not appear the Court properly considered Plaintiffs' argument that Legg Mason's breach of fiduciary duty lies not in its failure to commence a modification proceeding but, rather, in its failure to (1) recognize that Plaintiffs were subject to GST tax liability; (2) alert Plaintiffs to the potential GST tax liability they would incur if a modification was not sought and; (3) advise Plaintiffs they were entitled to commence a modification proceeding as was their right under §35-15-410(b).

In its Memorandum Opinion, the Court also noted that "Plaintiffs do not dispute that Defendant abided by the terms of the trust" [93] p. 10. Although Plaintiffs do not base their theory of liability on the premise that Legg Mason violated an explicit term of the trust, Plaintiffs do argue that Legg Mason's failure to (1) recognize the GST tax issue, (2) alert Plaintiffs of the issue and (3) advise Plaintiffs accordingly, violates the clear intent of the trust and the applicable law governing trustees and their administration of trusts. Simply stated, Legg Mason's duties are not limited to those enumerated by the trust. Its duties arise both from the terms of the trust and from the common and statutory law that governs the trust and its administration.

In their Memorandum in Support of Response to Defendant's Motion for Partial

Summary Judgment [76], Plaintiffs addressed Legg Mason's argument that "As long as it administered the Trusts according to their terms and paid the benefits as established in the trust instrument, Legg Mason satisfied its duty to Plaintiffs and the other beneficiaries."  Plaintiffs' response to this argument was and is that Legg Mason's argument "completely ignores the breadth and scope of its fiduciary duties" [76] p. 12.  The issue is not whether Legg Mason administered the trusts according to their terms, nor is the issue whether Legg Mason had a duty to commence a modification proceeding on its own initiative.  The issue is whether Legg Mason owed Plaintiffs the duty to inform them of their real or potential GST tax liability in a timely manner such that Plaintiffs could have acted to protect their interests as contemplated by Tenn. Code Ann. §35-15-813(a)(1).

The argument that Legg Mason failed to meet the fiduciary duty set forth in Tenn. Code Ann. §35-15-813(a)(1) was asserted in Plaintiffs' Memorandum in Support of Response to Defendant's Motion for Partial Summary Judgment [76] where it was duly supported with citations to law, to relevant facts and to expert opinions.  The argument that Legg Mason can be held liable by this Court for its failure to recognize and take appropriate steps to alert Plaintiffs to a serious and detrimental issue squarely within Legg Mason's admitted area of expertise is not a novel legal theory, but one that has been presented to juries under numerous analogous factual and legal scenarios for decades.  A ready example of this theory is the failure of a physician to diagnose a life threatening disease such as has been argued in innumerable medical malpractice disputes.

Assume a patient is seen by a physician who owes her the duty to utilize his training and skills to treat her and that, after hearing the patient's complaints, the physician determines there

is no diagnosis and prescribes no treatment. The patient, who has placed her trust and confidence in the physician, believes there is no need to worry and does not take any immediate further action. Assume then, that six months later, the patient learns from another doctor that she has a fatal cancer that could have been treated if only it had been discovered sooner. Under such a scenario, the physician who failed to identify, diagnose and prescribe a course of treatment for the cancer, may be held liable to the patient because he has deprived her of an opportunity to treat the cancer.

In the instant case, Legg Mason failed to inform Plaintiffs of their GST tax liability in 2004, 2005 and 2006. Moreover, Legg Mason failed to inform them that they could seek a modification of the trust in an effort to limit their GST tax liability. Here, as in the medical malpractice analogy, Plaintiffs were never given a chance to seek a course of treatment even though one was readily available and it would likely have resulted in a favorable outcome. Legg Mason should have recognized the cancer, it should have alerted Plaintiffs and it should have prescribed a course of treatment or, at the very least, notified Plaintiffs of their tax exposure and advised them of possible courses of action which they could have independently pursued. Like the physician, Legg Mason did not have to undertake the treatment itself, but it did owe Plaintiffs the fiduciary duty to present them with the material facts necessary in order for them to protect their interests. Legg Mason failed to do so, to Plaintiffs' great detriment.

Plaintiffs have shown the Court, through the opinions of a qualified expert and the testimony of the drafter of the trust instrument, that Legg Mason could have assigned Plaintiffs the right to seek a warranted modification of the trust and private letter ruling from the IRS, and that a Tennessee Court would have likely approved the modification given that it would have

neither affected the charitable remainder trust nor been detrimental to the interests of any existing or expected beneficiary. However, it does not appear the Court properly considered the legal and factual support for this argument. Had the Court fully considered Plaintiffs' argument that Legg Mason failed to meet its fiduciary duty when it neglected to inform Plaintiffs of the material facts necessary for them to protect their interests, the Court would not have granted summary judgment in favor of Legg Mason on this issue.

It does not reasonably appear that the Court viewed the facts presented in Plaintiffs' Memorandum in Support of Response to Defendant's Motion for Partial Summary Judgment [76] in the light most favorable to Plaintiffs nor that the Court drew all reasonable inferences in favor of Plaintiffs. Had the Court done so, it could have come to but one conclusion: Had Legg Mason informed the Plaintiffs of their GST tax liability in 2004 and of their right to commence a modification proceeding, Plaintiffs would have paid the fees and expenses necessary to minimize or eliminate their tax liability. Because Legg Mason failed in its fiduciary duty, Plaintiffs were unable to take the necessary steps to protect their financial interests and were required to pay $438,000 in GST taxes at one time. Legg Mason should be held responsible for its failure. At a minimum, a jury should be permitted to hear Plaintiffs arguments to this effect.

**C.  *Stock Loss***

In its Memorandum Opinion, the Court noted that Legg Mason had offered "a trio of arguments which all suggest that a plaintiff who has been injured may not recover for a potential future economic loss due to the sale of an asset to repair his injury" [93] p. 11. The Court then conducted an examination of Tennessee law as it relates to the availability of damages for an "economically less advantageous sale" and concluded that "to recover for future effects of an

injury, the future effects must be shown to be reasonably certain and not a mere likelihood or possibility." *Id.* Under these premises, the Court ruled that Plaintiffs "have not shown that their 'stock liquidation loss' is reasonably certain and more than a mere likelihood or possibility." *Id.*

The Court should reconsider its ruling as to Plaintiffs' claim for stock liquidation losses because this claim does not concern the recovery of a potential future economic loss due to the sale of an asset. In fact, the arguments made by the parties in their respective filings with this Court reveal that neither Plaintiffs nor Legg Mason have argued that Plaintiffs are seeking to recover for a potential future economic loss.

Plaintiff seeks redress for damages incurred as a result of Legg Mason's admitted negligence in failing to notify them of their tax liabilities on a yearly basis as required by IRS regulations. Legg Mason's negligence in this regard caused Plaintiffs to incur a $438,000 tax bill plus interest and penalties. In light of both the size and the wholly unexpected nature of the tax bill with which Plaintiffs were confronted, it was reasonably foreseeable that they would suffer a negative financial impact by having to raise the $438,000 plus interest needed to pay this liability at one time and without further penalty. Likewise, it is unreasonable to assume Plaintiffs would have $438,000 in cash on hand in 2008. Instead, the only reasonable assumption is that Plaintiffs would have to liquidate assets to pay their tax bill. Rather than violate federal tax law, Plaintiffs chose to liquidate stocks held in trust for their benefit and use a line of credit secured against those assets to pay their tax liability. It was reasonably foreseeable that such a liquidation would cause financial damage to Plaintiffs' stock holdings and this is, in fact, exactly what happened.

Since Legg Mason failed in its duty to timely and properly inform Plaintiffs of their annual GST tax obligation, the tax liabilities for 2004, 2005 and 2006 went unpaid. By the time

Plaintiffs learned this fact in 2008, they no longer had the ability to pay those liabilities in the usual course, i.e., in annual increments. Instead, they were required to pay their entire tax liability for 2004, 2005, 2006 and 2007 at once. In addition, they were required to pay late payment interest for tax years 2004, 2005 and 2006. This placed a significant and unexpected burden on Plaintiffs who had no reason to set aside any funds in anticipation of such an occurrence. As a result, they had to liquidate thousands of shares of PepsiCo stock held in two exempt trusts during the greatest economic downturn since the Great Depression. But for Legg Mason's negligence, Plaintiffs would still own the PepsiCo stock and would have continued to realize quarterly dividends from that stock.

As evidenced by its reference to the court's decision in <u>Mid-South Indus., Inc. v. Martin Mach. & Tool, Inc.</u>, 2010 Tenn App. LEXIS 208, at *26-28 (Tenn. Ct. App. March 19, 2010), [93] p. 11, this Court examined the stock loss element of Plaintiffs' claim as it would examine a future uncertain loss. However, like the plaintiffs in <u>Mid-South Indus., Inc.</u>, the Plaintiffs in this case are seeking damages for a sale that has already taken place, not from a potential future sale as this Court found. The damage suffered by Plaintiffs occurred when the stock was sold in 2008 at one of the lowest points of the recession. The stock was only sold at this time because Legg Mason's admitted negligence in failing to recognize the GST tax issue had prevented Plaintiffs from paying their GST tax liability on a yearly basis.

Plaintiffs have produced an expert who has worked out a formula that provides a reasonable measure of the damages Plaintiffs suffered when they were forced to sell their stock assets in 2008. The formula reasonably assumes that the value of PepsiCo stock will continue to increase over time. The assumption that PepsiCo stock will continue to rise is entirely

reasonable given relevant historical data and market trends, and Legg Mason has provided no basis upon which the Court could find otherwise. Nevertheless, the Court found in its Memorandum Opinion that the assumption of rising value is speculative because Plaintiffs' expert, Roderick Russ, conceded during his deposition that, if the repurchase price was lower than the sale price, there would be no damage to Plaintiffs [93] p. 11.

Mr. Russ honestly answered the hypothetical question posed by Legg Mason's counsel, but neither the question nor his answer are relevant. Plaintiffs are not required to prove their damages to an absolute certainty. They are only required to show that they are reasonably certain. The formula offered by Mr. Russ meets the requirement of reasonable certainty and Legg Mason has failed to present any evidence sufficient to show that it is not reasonable to assume that a blue chip stock sold at the height of the worst recession since the Great Depression will not continue rise in value as market conditions improve.

Retirement plans are based in the premise that stocks will increase over time even if there are dips in the market. If this were not a reasonably safe assumption, there would be no 401(k) plans. The assumption made by Mr. Russ and required by his formula is valid and proven. On the date of his first expert report, the price per share of PepsiCo stock had increased over $6.00 since the relevant sale date in 2008. As of the date of this Motion to Reconsider, the price per share has increased over $10.00 per share.

There is nothing speculative about the damage to Plaintiffs' financial position. Prior to the date when they were forced to liquidate stock assets to pay the enormous tax debt caused by Legg Mason's negligence, Plaintiffs had over 15,000 shares of PepsiCo stock. As a result of the forced sale, Plaintiffs no longer have all of these assets. The loss in value suffered by Plaintiffs

is the current price minus the sale price – which is approximately $10.00 per share. In addition, Plaintiffs have suffered a loss equal to the dividend they would have received for each quarter from January 2009 until January 2011 multiplied by the number of shares sold in 2008. These are past damages already incurred, not damages based on a potential future sale.

As mentioned above, the loss in value suffered by Plaintiffs is reasonably certain based on the timing of the sale and the history of the stock and stock market. The chance that the value of PepsiCo stock will fall below $55.00 (i.e., the 2008 sale price) as Legg Mason hypothetically suggested during Mr. Russ's deposition and as it suggests to the Court in its moving papers, is nothing more than a possibility. It is not a reasonably certain probability. In fact, Legg Mason has pointed to no evidence that would suggest such a dramatic drop in value is even remotely likely to occur. In ruling on a motion for summary judgment, the Court should not accept a mere possibility presented by the moving party over a reasonably certain probability offered by the non-movant. Moreover, the fact that Plaintiffs have lost quarterly dividend payments due to their forced sale of PepsiCo stock in 2008 is more than reasonably certain, it is absolute.

The Court should reconsider its decision to exclude this measure of damages. The law does not require exactness in the computation of damages, so long as the proof of damages is sufficiently certain to enable the trier of fact, using its discretion, to make a fair and reasonable assessment of damages. *See* <u>Discover Bank v. Morgan</u>, 2010 WL 1998765, *7 (Tenn. Ct. App. 2010). Here, taking the facts in a light most favor to Plaintiffs, with all reasonable inferences drawn in favor of Plaintiffs, it is apparent that the trier of fact, the jury, should have the opportunity to make a fair and reasonable assessment of whether Plaintiffs suffered a loss as a result of Legg Mason's breach of its fiduciary duties, and the amount of that loss.

### D. Emotional Damages

The Court should reconsider its determination that Plaintiff Hobbs should not be allowed to present his claim for emotional damages. The Court cited *Whaley v. Perkins*, 197 S.W. 3d 665 (Tenn. 2006) to support its decision. [93] p. 12. However, it appears that the Court disregarded a portion of the citation. The cited portion of the *Whaley* decision states: "Where, however, the act occasioning the injury to the property is inspired by fraud, malice **or other like motives**, mental suffering is a proper element of damage." [93] p. 12 (emphasis added). Plaintiffs made a claim for punitive damages based on Legg Mason's reckless disregard for the rights of Plaintiffs as beneficiaries of the Trust. Although Legg Mason's actions and inaction may not have been fraudulent or malicious, a finder of fact could certainly characterize them as reckless or grossly negligent. Since recklessness and/or gross negligence are "other like motives" as noted by the *Whaley* decision, Plaintiff Hobbs is entitled to present his claim for emotional damages to a jury.

### E. Conclusion

Plaintiffs would respectfully request that this Honorable Court reconsider its prior ruling granting summary judgment in favor of Legg Mason on the basis that Plaintiffs' responses to Legg Mason's arguments have not been fully and properly considered. Plaintiffs claim their GST tax liability could have been minimized or avoided if Legg Mason had met its fiduciary duty to utilize its special skills and expertise to provide the beneficiaries of the trust with proper information and advice. Because Legg Mason failed in its fiduciary duties, Plaintiffs were forced to pay an unnecessary $438,000 in GST taxes. Furthermore, Plaintiffs sustained a definite loss when they were forced to sell 15,000 shares of PepsiCo stock during one of the worst economic downturns in American history. The sale of this stock caused them to suffer financial damages

-11-

that are reasonably certain. Finally, Plaintiff Hobbs should be allowed to present a claim for emotional damages as a result of Legg Mason's gross negligence and/or reckless disregard for his rights. Taking all facts in the light most favorable to Plaintiffs and considering all reasonable inferences in their favor, summary judgment is not warranted. The Court should reconsider its opinion and reverse its determinations awarding summary judgment.

Respectfully submitted, this the 11th day of January, 2011

CYNTHIA BEVINGTON and FLOYD HOBBS, JR.

HICKMAN, GOZA & SPRAGINS, PLLC
1305 Madison Ave.
P. O. Drawer 668
Oxford, MS 38665-0668
(662) 234-4000

   */s/ S. Kirk Milam*
SHELBY DUKE GOZA, MSB # 4927
S. KIRK MILAM, MSB # 99637
kmilam@hickmanlaw.com

-12-

## <u>CERTIFICATE OF SERVICE</u>

I, S. Kirk Milam, of Hickman, Goza & Spragins, do hereby certify that I have this day filed with the Clerk of the Court using the CM/ECF system a copy of the above and foregoing which sent notification of such filing to the following:

J. Stevens Ray
BUTLER, SNOW, O'MARA, STEVENS & CANNADA
P.O. Box 22567
Jackson, MS 39225-2567
steve.ray@butlersnow.com

This, the 11th day of January, 2011.

*/s/ S. Kirk Milam*
S. KIRK MILAM