IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

FLOYD HOBBS, JR.
and CYNTHIA BEVINGTON                                                           PLAINTIFFS

V.                                                          CIVIL ACTION NO. 3:09-CV-9-SA-DAS

LEGG MASON INVESTMENT COUNSEL
& TRUST CO., N.A.                                                                DEFENDANT

MEMORANDUM OPINION

In an earlier opinion, the Court granted Defendant's Motion for Partial Summary Judgment [73] as to Plaintiffs' claims for generation-skipping transfer tax liability, stock liquidation losses, and emotional damages. The Court also deferred ruling on Defendant's Motion for Partial Summary Judgment [73] as to Plaintiffs' claim for punitive damages. Because of those rulings, the Court found Defendant's Motions to Exclude Expert Testimony [74, 75] to be moot.

Plaintiffs have filed a Motion for Reconsideration [95] on those issues.[1] The Court hereby clarifies its earlier Order and Memorandum Opinion.

*Reconsideration Standard*

Federal Rule of Civil Procedure 59(e) grants the Court the power to alter or amend its judgment. That Rule "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence and is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." Knight v. Kellogg Brown & Root Inc., 333 F. App'x 1, 8 (5th Cir. 2009) (citing Templet v. HydroChem Inc., 367 F.3d 473, 478-79 (5th Cir. 2004)) (punctuation omitted); see also

---

[1] Plaintiffs have also filed a Motion for Hearing [97] on the Motion for Reconsideration. The Court rarely grants such requests and declines to do so here.

Nationalist Movement v. Town of Jena, 321 F. App'x 359, 364 (5th Cir. 2009) ("Motions for reconsideration should not be used to raise arguments that could have been made before the entry of judgment or to re-urge matters that have already been advanced by a party.") (citing Waltman v. Int'l Paper Co., 875 F.2d 468, 473-74 (5th Cir. 1989)).

The federal courts of this state recognize three potential grounds for the Court to alter or amend a judgment under Rule 59(e): "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." Williamson Pounders Architects, P.C., 2008 U.S. Dist. LEXIS 87680 at *4 (N.D. Miss. Oct. 29, 2008); see also Atkins v. Marathon LeTourneau Co., 130 F.R.D. 625, 626 (S.D. Miss. 1990). This Court has considerable discretion in deciding whether to grant a motion for reconsideration. Edward H. Bohlin Co. v. Banning Co., 6 F.3d 350, 355 (5th Cir. 1993). Granting a motion for reconsideration, however, is "an extraordinary remedy and should be used sparingly." In re Pequeno, 240 Fed. Appx. 634, 636 (5th Cir. 2007) (citations omitted).

*Discussion and Analysis*

Plaintiffs assert three issues on which the Court erred in its Order and Memorandum Opinion: (1) dismissal of Plaintiffs' GST tax liability claim; (2) dismissal of stock liquidation losses as an element of damages; and (3) dismissal of Hobbs' emotional distress claim. The Court addresses each in turn.

Defendant's Motion for Partial Summary Judgment claimed dismissal was appropriate for Plaintiff's theory of liability solely based on the duty to modify. In the Memorandum Opinion issued January 11, the Court held that under Tennessee law, Legg Mason had no duty to modify the trust to avoid GST tax liability to Plaintiffs; therefore, the claim for GST tax liability was dismissed.

Plaintiffs assert that in dismissing Plaintiffs' GST tax liability claim, the Court failed to consider Plaintiffs' position that Legg Mason had a duty to reasonably inform Plaintiffs of the material facts necessary for them to protect their interests, pursuant to Tennessee Code Section 35-15-813(a)(1). Thus, Plaintiffs contend that Legg Mason breached that fiduciary duty rendering them liable for the GST taxes that were unnecessarily imposed on Plaintiffs.

The Court stated in its Memorandum Opinion, "Plaintiffs' entire theory of liability is premised upon the argument that Defendants had a duty to seek a modification of the trust to minimize GST tax liability." After reviewing Plaintiffs' Motion to Reconsider, Response to the Motion for Partial Summary Judgment, and Amended Complaint, the Court erred in assuming modification was the only theory of liability Plaintiffs asserted. Indeed, Plaintiffs contend Legg Mason breached its fiduciary duties by "failing to notify the plaintiffs of the tax consequences of the income distributions . . . ." Moreover, Plaintiffs allege the Defendants negligently "failed to properly notify plaintiffs" of several issues surrounding the GST tax liability issue.

Tennessee Code Section 35-15-813(a)(1) requires a trustee to "keep the beneficiaries of a trust . . . reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." Thus, to the extent that this Court's prior Order and Memorandum Opinion precluded Plaintiffs' advancement of GST tax liability for Defendant's alleged breach of that fiduciary duty or negligence, the Court reverses that finding. Plaintiffs' Motion for Reconsideration as to GST tax liability is therefore granted. However, the Court's original determination that Defendant had no duty to modify the trust stands.

The Court held in its previous opinion that Plaintiffs' stock liquidation losses were too speculative and not reasonably certain. Plaintiffs have not put forth any evidence that warrants

3

reconsideration of this issue.

Plaintiffs also contest this Court's dismissal of Hobbs' emotional damages. The Court cited Whaley v. Perkins, 197 S.W.3d 665, 670 (Tenn. 2006), for the proposition that plaintiffs may recover for mental anguish where the injury to property is "inspired by fraud, malice, or like motives . . . ." Plaintiff seeks to convince the Court that their allegations against Defendant amounts to recklessness which could be a "like motive" of fraud or malice. This Court is unpersuaded that Plaintiff is entitled to reconsideration on this claim.

*Motions to Exclude Expert Testimony*

Defendant filed motions to exclude the testimony of two of Plaintiffs' expert witnesses. The Court originally found those motions moot; however, on reconsideration, the motions must be considered.

Federal Rule of Evidence 702 allows testimony from "a witness qualified as an expert by knowledge, skill, experience, training, or education" if such testimony will assist the trier of fact and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the United States Supreme Court set out the criteria that district courts are to follow in assessing challenged expert testimony offered under Federal Rule of Evidence 702. "Proposed testimony must be supported by appropriate validation – i.e., 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertains to 'scientific knowledge' establishes a standard of evidentiary reliability." Daubert, 509 U.S. at 590, 113 S. Ct. 2786. The

trial court has a duty to screen expert testimony for both its relevance and reliability. Id. An expert, to state an opinion, must have a reliable basis in the knowledge and experience of his discipline." Id. at 592, 113 S. Ct. 2786. Under Rule 703, an expert must base his opinion upon facts and data of a type reasonably relied upon by experts in the field. Id. at 595, 113 S. Ct. 2786. Thus, the Court must determine that the reasoning and methodology underlying the testimony is scientifically valid and that the reasoning and methodology can properly be applied to the facts in issue. Id. at 592-93, 113 S. Ct. 2786.

Although the Supreme Court has suggested that the Daubert standard is a flexible one, the district court should "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); Daubert, 509 U.S. at 592, 113 S. Ct. 2786; Vogler v. Blackmore, 352 F.3d 150 (5th Cir. 2003). "[T]he heart of Daubert is relevance and reliability. As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gatekeeping function. After that qualifications become an issue for the trier of fact, rather than for the court in its gatekeeping capacity." Rushing v. Kansas City Southern, 185 F.3d 496, 507 (5 Cir. 1999) (citing Daubert, 509 U.S. at 596, 113 S. Ct. 2786). District Courts have wide discretion in determining the admissibility of expert testimony. Moore v. Ashland Chem. Inc., 151 F.3d 269, 274 (5th Cir. 1998).

A.  *Mark Hartnett*

Plaintiffs intend to present the expert testimony of Mark Hartnett to show that Defendant breached a fiduciary duty to Plaintiffs by failing to properly handle the tax issues attached to the

underlying trusts, which exposed Plaintiffs to GST tax liability. Hartnett's report includes a description of certain standards of fiduciary conduct, including Tennessee's Uniform Trust Code.[2] Hartnett concluded that Defendant failed to meet those standards by failing to administer the trusts in a prudent manner; failing to use its special skills or expertise in the administration of the trusts; failing to inform Plaintiffs of the tax implications of their distributions; failing to use its discretionary power in good faith in accordance with the terms and purposes of the trusts and the interests of beneficiaries; and failing to comply with its duty of loyalty to Plaintiffs.

Hartnett believes that Defendant should have recognized that Plaintiffs' mother's death created skip beneficiaries who were subject to potential GST tax liability. He believes that Defendant should have sought a modification of the trusts through the Tennessee courts to reapportion the distributions so that the full distributions to Plaintiffs came from the "Exempt Trusts" – the assets of which were exempt from GST tax liability. He further believes that Defendant should have sought a private letter ruling from the IRS approving the modified distribution scheme. Hartnett opines that this reapportionment of the distribution proportions would not subject the remaining original beneficiaries to additional tax liability, in that they were not subject to GST taxes because they were within one generation of the grantor.

As noted in the previous Memorandum Opinion, Defendant was not under any duty to seek a modification of the trust, and it may not be liable for failing to do so. Tenn. Code Ann. § 35-15-410(c). Therefore, any testimony from Hartnett pertaining to Defendant's failure to modify the trust is excluded.

*1.    Relevance*

---

[2]TENN. CODE ANN. § 35-15-1, et seq.

First, Defendant argues that Hartnett's testimony is irrelevant because it expresses a legal opinion that will mislead the jury. Rule 704 abolished "the per se rule against testimony regarding ultimate issues of fact," but it did "not open the door to all opinions." Owen v. Kerr-McGee Corp., 698 F.2d 236, 239-40 (5th Cir. 1983). The rule is not intended to "allow a witness to give *legal* conclusions." Id. at 240 (citing United States v. Fogg, 652 F.2d 551, 557 (5th Cir. 1981), *cert. denied*, 456 U.S. 905, 102 S. Ct. 1751, 72 L. Ed. 2d 162 (1982); United States v. Milton, 555 F.2d 1198, 1203 (5th Cir. 1977)). "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." Id. The Fifth Circuit cited an example of how the distinction between "legal conclusions" and "ultimate issues of fact" can sometimes amount to a simple turn of phrase:

> The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well as a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read.

Id. (citing FED. R. EVID. 704 advisory committee's note). Therefore, an expert witness may not merely "tell the jury what result to reach" and may not phrase opinions "in terms of inadequately explored legal criteria." FED. R. EVID. 704 advisory committee's note.

The Fifth Circuit applied these principles in Askanase v. Fatjo, 130 F.3d 657 (5th Cir. 1997). In that case, a party's proposed expert stated in a report that he intended to "give his opinion on 'whether [appellant's] officers and directors fulfilled their fiduciary duties to the Company, its creditors, and shareholders. If not, how and to what extend did [they] breach their fiduciary duties.'"

7

Id. at 673. The Fifth Circuit held: "Such testimony is a legal opinion and inadmissible. Whether the officers and directors breached their fiduciary duties is an issue for the trier of fact to decide. It is not for [the proposed expert] to tell the trier of fact what to decide." Id. (second alteration original). Accordingly, the trial court did not err in finding the proposed expert's testimony inadmissible. Id.

In Owen v. Kerr-McGee Corp., a homeowner hired a contractor to clear stumps from a parcel of land. Owen, 698 F.2d at 237. The contractor was injured when an unmarked gas pipe exploded. Id. at 238. The contractor subsequently sued the pipeline installer for negligence. Id. At trial, the defendant's attorney asked an expert witness, "[D]o you have any opinion as to the cause of the accident . . .?" Id. at 239. Plaintiff's counsel objected, and the trial court sustained the objection. Id. On appeal, the Fifth Circuit held that the question was improper, as there was no dispute as to the factual cause of the accident – the plaintiff ran over a gas line with his bulldozer. Id. at 240. Therefore, it was clear that the attorney was seeking a legal conclusion. Id.

After the trial court sustained the plaintiff's objection to the first question, defendant's counsel asked the following question:

> . . . [T]he past two days we have heard any number of witnesses who profess to be experts in the field of dirt contracting or land clearing, and I believe, if I recall correctly, and I think I do, their testimony was to the effect that they would notice a road crossing and then look for some signal, a turn indicator, a post or a painted fence, whereby they make a determination as to whether or not they are going to be working close to a pipeline, and they would go on and do their work. Do you consider that, with your expertise, safe practice?

Id. Once again, the plaintiff's counsel objected. Id. The trial court overruled the objection. Id. On appeal, the Fifth Circuit observed that the second question remained within the realm of permissible expert testimony by "seeking a factual, not a legal, conclusion." Id. Therefore, it appears that where

the "ultimate issues of fact" in a case track closely with "legal conclusions," an expert's opinion may often be rendered admissible or inadmissible by a mere change in phrasing.

Askanase is clear that an expert witness may not merely tell the jury what a defendant's duty was, how they breached it, and how the damages resulted from that breach. Askanase, 130 F.3d at 673. However, it is likewise clear from the Fifth Circuit's prior decisions that counsel may clean up otherwise inadmissible expert testimony by merely asking a different question. See Owen, 698 F.2d at 240. Hartnett's report contains statements of fact, opinions, and legal conclusions. If Hartnett's trial testimony mirrors the report, some of it will likely be admissible, while some will likely be inadmissible. Therefore, wholesale exclusion of Hartnett's testimony would be premature at this point. However, the Court urges the parties to be mindful of the broad guidelines and specific cases cited above, as the Court shall not admit expert testimony that amounts to nothing more than mere legal conclusions. When disputed testimony arises at trial, the Court expects the parties to present *specific* case law to support the admission and/or exclusion of that testimony.

For the reasons stated above, the Court presently rejects Defendant's argument that Hartnett's testimony is irrelevant because it constitutes impermissible legal conclusions. However, the Court will consider objections on a case-by-case basis at trial.

   2.   *Reliability*

Defendant also argues that Hartnett's expert testimony is unreliable. First, Defendant argues that Hartnett's proposed opinion is unreliable because it had no duty to seek modification of the trusts. The Court rejects this argument, as it amounts to nothing more than saying Hartnett's opinion is unreliable because it is wrong. Defendant will have the opportunity to cross-examine Hartnett and present its own evidence. The jury may weigh Defendant's case against whatever expert testimony

9

of Hartnett's the Court ultimately admits.

Next, Defendant argues that it could not have sought modification of the trusts without breaching its duty to other beneficiaries. Defendant argues that modifying the trusts to allow all of Plaintiffs distributions to come out of the "Exempt Trusts" could potentially have been detrimental to any other skip beneficiaries in the event that one of the remaining original beneficiaries died. However, it is undisputed that there were no other skip beneficiaries. Therefore, there is no evidence that a modification would have harmed the interests of any other beneficiaries. Indeed, this is a curious argument for Defendant to make, insofar as it assumes a duty to hypothetical skip beneficiaries which Defendant denies it owes to Plaintiffs.

Finally, Defendant argues that Hartnett's testimony is unreliable because it is based on pure speculation. Specifically, Defendant notes that Hartnett's expert testimony rests on assumptions that 1) a Tennessee court would have approved a modification of the trusts, and 2) the IRS would have issued a private letter ruling approving of the modifications to the trust and allowing transfers to Plaintiffs solely from the "Exempt Trust."

It is the Court's responsibility to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, Co., Ltd., 526 U.S. at 152, 119 S. Ct. 1167. Therefore, "[a] court may rightfully exclude expert testimony where a court finds that an expert has extrapolated data, and there is 'too great an analytical gap between the data and the opinion proffered.'" Burleson v. Tex. Dep't of Crim. Justice, 393 F.3d 577, 587 (5th Cir. 2004) (quoting GE v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)). Typically, challenges to expert testimony predicated upon an argument that the expert relied on mere speculation concern more technical issues than the present case – e.g.

10

cases where an expert undergoes a stereotypical scientific analysis of collected data. See e.g. Burleson, 393 F.3d at 587 (expert failed to present evidence linking thoriated welding electrodes to lung or throat cancer, and his testimony was therefore unreliable); Carroll v. Morgan, 17 F.3d 787, 790 (expert's testimony was "grounded in the methods and procedures of science" and, therefore, was not mere "unsupported speculation"); United States ex rel. Barron v. Deloitte & Touche, LLP, 2008 WL 7136869, at *3-*4 (W.D. Tex. Sept. 26, 2008) (expert's statistical analysis was too speculative, as the sample size was too small).

The present case is different. It does not present a scientific issue, such as the amount of tension a rod can support, or the likelihood that a substance causes cancer. Rather, it presents questions of professional obligations and fiduciary duties. These are not questions which an expert typically answers by collecting a set of data and running statistical analyses. The Court may admit an opinion if it is based on evidence "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." FED. R. EVID. 703. Defendant has not presented any evidence or argument that Hartnett's opinion regarding the proper course of action to avoid GST tax liability is based on information not typically relied upon by experts in the field of estate planning. Therefore the Court presently rejects Defendant's speculation argument. However, Defendant will be permitted to thoroughly cross-examine Hartnett. Moreover, the Court will consider any specific objections related to speculation that Defendant may wish to make at trial. This ruling has no effect on potential motions at trial or after trial concerning damages and sufficiency of the evidence.

For all the reasons stated above, the Court grants in part and denies in part Defendant's Motion to Exclude Certain Testimony of Mark C. Hartnett [74].

### B. Roderick S. Russ, III

Plaintiffs intend to present the expert testimony of Roderick Russ to show that they suffered $137,622.00 in damages arising from their sale of PepsiCo stock to repay the line of credit they established to cover the GST tax liability and interest. As this Court has now twice rejected Plaintiffs' request for stock liquidation losses, the Motion to Exclude Russ' [75] testimony is granted.

#### 2. "Bucket" Theory

Defendant also argues that Russ's opinion that Plaintiffs' distributions should have come wholly from the "Exempt Trusts" should be excluded. Defendant's arguments mirror those in their motion concerning Hartnett's testimony. Therefore, the Court denies Defendant's Motion to Exclude Russ's "bucket theory" testimony, for the same reasons and subject to the same caveats as stated with regard to Hartnett's testimony.

*Conclusion*

For all the reasons stated above, the Court grants in part Plaintiffs' Motion for Reconsideration [95] as to Plaintiffs' claims for generation-skipping transfer tax liability, but denies that motion as to Plaintiffs' stock liquidation losses and emotional damages. Defendant's Motion to Exclude the Expert Testimony of Mark Hartnett [74] is granted in part and denied in part. Defendant's Motion to Exclude the "Stock Liquidation Loss" and "Bucket Theory" Testimony of Roderick Russ [75] is granted in part and denied in part. An order consistent with this opinion shall be entered on this day.

SO ORDERED, this the 25th day of January, 2011.

                                                 **/s/ Sharion Aycock**
                                                 **U.S. DISTRICT JUDGE**